No. 36,988

CHARLES BRUMM et al., Copartners doing business as Brumm Brothers, *Appellees,* v. JAMES ROLLAND GOODMAN et al., Copartners doing business as J. R. Goodman and Sons, *Appellants.*

(188 P. 2d 913)

Opinion filed January 24, 1948.

*Erle W. Francis,* of Topeka, argued the cause, and *Erle S. Francis,* of Topeka, was with him on the briefs for the appellants.

*Arthur S. Humphrey,* of Junction City, argued the cause, and *James V. Humphrey,* of Junction City, was with him on the briefs for the appellees.

The opinion of the court was delivered by

HOCH, J.: This was an action on a contract which was in part oral and in part written. Plaintiffs sought specific performance and damages if performance could not be had. The trial court held that the written part of the contract was illegal and void but gave judgment for specific performance under the oral part of the contract. The defendants appeal from the judgment and from various adverse rulings. The principal question here is whether the contract was separable.

In view of the conclusion presently to be stated on the basic issue which determines the appeal, it is unnecessary to discuss incidental issues or to recite allegations and rulings on motions not material thereto.

The defendants, appellants here, were holders of a certificate issued by the interstate commerce commission authorizing operations as an interstate motor common carrier. The plaintiffs, appellees, alleged in their petition that on March 8, 1945, they entered into an oral contract with the defendants under which they agreed to buy and defendants agreed to sell the interstate certificate together with the business, good will, and all rights incident to the operations under the permit, the sale price being $500, the last payment to be made when the defendants tendered the transfer of the certificate. They further alleged in the petition:

*"That at the same time they so contracted and as a part of said contract* plaintiffs and defendants entered into a written contract, a copy of which is hereto attached, marked Exhibit 'A' and made a part hereof; that in the execution of aforesaid written contract defendant James Rolland Goodman was acting for himself, his partnership and his co-defendants; that *said written contract was entered into by the parties for the purpose of permitting plaintiffs to operate their Chevrolet truck,* described in said contract, *under the Interstate Commerce certificate* mentioned above and *for the purpose of putting plaintiffs into the* possession and *operation of the truck route and business* covered by said certificate; that plaintiffs thenceforth, as business offered, *operated said route until stopped by defendants as hereinafter set out;* that as a further part of said oral contract, the parties agreed to execute an application to the Interstate Commerce Commission for said transfer and to execute all other instruments necessary to carry out the contract." (Italics supplied.)

The exhibit "A" referred to was a motor truck lease under which plaintiffs agreed to lease to the defendents a truck and trailer which they owned. Further reference to the terms of the lease will be made later. Asserting that they had been ready and able at all times to carry out the terms of the contract, they alleged that the defendants refused to carry out the contract and make a transfer of the certificate and "that on or about November 19, 1945, defendants arbitrarily caused to be revoked *the arrangements by which plaintiffs were authorized to operate under said certificate,"* etc. (Italics supplied.)

Plaintiffs prayed for specific performance "requiring defendants to execute the necessary instrument to effectuate said contract" together with one thousand dollars damages, and that if defendants could not perform the contract specifically, plaintiffs be awarded damages in the sum of two thousand dollars.

The defendants filed a motion to require plaintiffs to separately state and number their causes of action on the ground that they were so intermingled that defendants could not properly plead to

them and that plaintiffs asked for specific performance under an oral contract and for damages for violation of a written contract. This motion was overruled and we assume was resisted by the plaintiffs. Defendants' demurrer to the petition was also overruled. In their first answer defendants asserted, *inter alia*, that the alleged contract was illegal and void under federal statutes and under the rules and regulations of the interstate commerce commission, such laws and regulations being identified by title. Upon motion of the plaintiffs, all references to the alleged illegality of the contract and to the laws and regulations involved were stricken from the answer. In an amended answer, the defendants again asserted that the alleged contract was illegal and void, citing and setting out various regulations of the interstate commerce commission in support thereof. The reply, insofar as its averments need to be noted, was a general denial.

At the conclusion of plaintiffs' opening statement, the defendants moved for judgment on the pleadings and the statement on the grounds "that the contract of sale as merged with the contract for leasing of equipment in operations as conducted under the leased equipment was illegal and therefore the entire contract had failed." This motion was overruled and the trial proceeded. At the conclusion of plaintiffs' evidence, the defendants demurred to the evidence. The court sustained the demurrer as to the written contract of lease but overruled it as to the oral contract. Defendants then introduced their testimony. In the judgment which followed, the court found that the defendants had agreed to sell and assign to the plaintiffs their interstate motor carrier certificate and directed them to perform specifically according to the terms of the oral contract and that if it be impossible to complete such transfer, then the plaintiffs should recover from the defendants the sum of two thousand dollars. Motion for new trial was made and overruled.

In announcing its ruling on defendants' demurrer to the evidence, the court commented as follows:

"I held at the time the demurrer was filed, that is the demurrer to the petition, I mean, and on at least one or two motions which attacked the petition, that these contracts were fair on their face, as pleaded, and refused to strike them out for the reason that it seemed to me that it was possible under the rules of the Interstate Commerce Commission, which were before the court at that time, to enter into such a contract. The rules of the Interstate Commerce Commission, as I remember them, provided that when any equipment which did not belong to the holder of the permit was used under that

permit that it must be in the nature of a lease which gave the full control over the equipment to the holder of the permit, including authority over the driver, if I am not mistaken. Now, it would have been perfectly within the law and within those rules for that kind of an arrangement to be entered into, but now *it appears from this evidence that an entirely different situation is presented. Under this lease the owner of the permit practically turned the permit over to the owners of the equipment. The drivers of the equipment were not in any way under the control of the owner of the permit.* It provided for a certain mileage fee to be paid. That fee was not paid, but evidently wasn't expected to be paid, so it seems to me from this evidence, and under the rules of the Interstate Commerce Commission, the Federal law, that *both of these leases* which are identified as *Exhibits A and B are void.* Now, we come to the proposition as to the main suit, which is the specific performance of the contract. That is not a specific performance of these leases; it is a specific performance of the contract to sell this permit. *I am just a little bit in doubt as to whether or not we can separate these at this time. The contract to transfer the certificate did not necessarily carry with it the matter of using those trucks.* That seems to have been a side contract. It is true that I held upon your motion, Mr. Francis, that those were not necessarily two causes of action, *and I still think they are not two causes of action.* There is nothing asked— well, yes, there is one thousand dollars in damages asked by reason of the cancellation of those, too. Maybe I was wrong in so holding; if I was, why that would not be an excuse for staying wrong all the rest of the way through the case. *I think under this evidence that those leases are void;* that neither party would have the right to recover on them, and that as to them the parties must be left as they are. But I don't believe that that affects the oral contract in the case, and that being still in the case the demurrer will have to be overruled." (Italics supplied.)

It thus appears that the trial court determined that the arrangement sought to be effected by the written lease was illegal and void, but concluded rather hesitantly that this illegality did not vitiate the oral contract to transfer the interstate certificate. The court reached this conclusion in spite of its expressed view that there *was only one cause of action.* And yet at the same time, the court observed that the agreement to transfer the certificate "seems to have been a side contract."

In view of the trial court's findings that the written portion of the contract was illegal and void, we shall not discuss at length the matter of illegality.

No one may lawfully operate as an interstate motor common carrier without first obtaining a certificate from the interstate commerce commission authorizing such operation. In passing upon applications for such certificate, the commission gives consideration to the financial responsibility of the applicant and to other such mat-

ters important to the public and as required by the law and the regulations. Obviously no holder of such a certificate can by contract or otherwise transfer the certificate to anyone else without approval of the interstate commerce commission. It is as essential that the commission pass upon the qualifications of the transferee as it is in the case of the original applicant. It is unnecessary to recite in detail provisions of these regulations.

Although the ruling of the trial court sustaining the demurrer as to the written lease on the ground of its illegality is not here for review, appellees contend that the lease was valid on its face and that in order to invalidate it, it was necessary to show that there was an intention to perform it in an illegal manner and that the parties themselves knew the law on the subject. But the lease must be construed in connection with appellees' averments as to its purpose. Both the averments of the petition and the testimony of the plaintiffs showed conclusively that the execution of the lease was an attempt to effect an arrangement under which they could begin operating the route before they had any authority to do so. The defendants held a certificate which the plaintiffs sought to secure. The plaintiffs owned a truck and alleged in the petition that they executed the lease of the truck to the defendants for the very purpose of permitting them to operate the truck under the certificate. On what theory anyone thought such a lease of the truck to the defendants would permit the plaintiffs to operate under the certificate prior to approval by the interstate commerce commission does not appear. Certainly it could have no such effect. There was no way in which the purpose of the contract could lawfully be carried out. It may be noted that the lease provided:

"During the period of this lease complete possession and *supervision* of the equipment mentioned herein *will be vested exclusively in the lessee,* who will operate same with a driver in his employ." (Italics supplied.)

That statement in the lease is wholly contrary to the allegations of the petition and wholly contrary to plaintiffs' evidence. In the petition they not only alleged that the purpose of the lease was to put them in a position to *operate the route themselves* but that in fact they did, thereafter, operate the route "until stopped by defendants"; all of this without approval of the transfer by the commission. Their testimony was to like effect.

It is well settled both at law and in equity that the courts will not aid either party to an illegal agreement. (17 C. J. S. 656 *et*

*seq.*) The law "leaves the parties where it finds them." Except in some cases where the parties are not *in pari delicto,* the rule applies even though both parties were party to the illegal contract. "While it may not always seem an honorable thing to do, yet a party to an illegal agreement is permitted to set up the illegality as a defense, even though it may be alleging his own turpitude." (17 C. J. S. 659.)

The record indicates that the occasion for attempting the arrangement involved in the written lease was an unfortunate delay in securing the signature of one of the defendants to the application for transfer. This may be an extenuating circumstance, but could not make lawful an unlawful operation. We are not saying that the parties were fully aware of the illegality of the arrangement which they sought to effectuate. There was some testimony that they were led to believe, under advice from a traffic bureau, that the proposed scheme would enable them to avoid the necessity of delaying operations until the certificate had been transferred to them by the commission. It is difficult to see how anyone—and especially a motor traffic bureau—could believe that.

The rather recent case of *Roddy v. Hill Packing Co.,* 156 Kan. 706, 137 P. 2d 215, involved a contract to transport goods as a contract motor carrier, for hire, by one who had not been licensed as such. In the opinion, with many cases cited in support, it was said:

"It is elementary law that a contract obligating the parties or either of them to violate a penal statute is unenforceable and void; and the breach of such contract is *damnum absque injuria*—a matter for which the law provides no redress. A long line of well considered cases has committed this court to the rule that where a statute expressly provides a violation thereof shall be a misdemeanor, a contract made in direct violation of the same is illegal and there can be no recovery thereon although such statute does not in express terms prohibit the contract or pronounce it void." (p. 715.)

We come to the question of whether the oral agreement to transfer the certificate was separable and enforceable in spite of the illegality of the contract otherwise. We think that both the allegations of the petition and the plaintiffs' testimony show that it was one contract. In the petition the plaintiffs specifically alleged that at the same time they entered into the oral contract and "as a part of said contract" they executed the written lease. There was no allegation of separate considerations. Plaintiffs' truck was leased to defendants for the very purpose, however futile, of permitting them to begin operations without waiting for transfer of the certificate by the commission.

The testimony is clearly to the same effect. All the circumstances, and the direct testimony as well, indicated that the lease of equipment and the proposed transfer of the certificate were part of the same transaction. Charles Brumm, one of the plaintiffs, testified: "We agreed to pay $250 down and $250 when it was transferred, *if they would lease the equipment and keep the trucks under the permit. He agreed to that.*" (Italics supplied.) Plaintiffs leased the truck to the defendants, but contrary to the provisions of the lease, the defendants did not operate it. Clearly it was never intended that they should operate it. The plaintiffs proceeded to operate it, paid their own drivers, paid the expenses of operation, issued freight bills in their own name, kept all the records, paid the mileage tax and the insurance, kept all the money, retained all the profits, and carried on the business generally in the same manner as though they had been the owners of the certificate, except that they sent daily reports to the defendants and cleared ports of entry in the name of the defendants.

It would not be helpful, and would unduly extend this opinion to discuss various cases from among the countless number on the issue of separability of contract provisions, since each case must be decided upon the particular facts involved. A rather recent Kansas case involving a question of separability quite similar to the instant one is *Limpp v. Dodge,* 146 Kan. 948, 73 P. 2d 1001.

The contract being a unit, and not separable, no part of it was enforceable. Under the rule that where an action has been brought on a contract and it appears in the course of the trial that the contract sued on is unlawful, it is the duty of the trial court to dismiss the action (*Sage v. Oil Country Specialties Mfg. Co.,* 138 Kan. 501, 27 P. 2d 542; *Ditzen v. Given,* 139 Kan. 506, 32 P. 2d 448; *Roddy v. Hill Packing Co.,* supra, p. 717). Illegality of the contract was at least strongly indicated by the averments of the petition and certainly had become apparent under plaintiffs' evidence.

The judgment is reversed and the case remanded with directions to dismiss the action.