No. 65,328

EARLY DETECTION CENTER, INC., *Appellant*, v. DR. MARVIN H. WILSON, *Appellee*, and LOU A. STANDIFERD and ADVANCED DIAGNOSTIC CENTER, *Defendants*.

(811 P.2d 860)

Opinion filed May 24, 1991.

*Jeffrey L. Baxter*, of Chapman, Waters and Baxter, of Leavenworth, argued the cause and was on the briefs for appellant.

*Deanne Watts Hay*, of Sloan, Listrom, Eisenbarth, Sloan & Glassman, argued the cause, and *Arthur A. Glassman*, of the same firm, was with her on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Early Detection Center, Inc., (EDC) appeals from the decision of the trial court granting summary judgment to Dr. Marvin H. Wilson. EDC filed this action against Dr. Marvin H. Wilson, an incorporator, officer, director, 30% shareholder, and employee of EDC, alleging that Dr. Wilson, after having been removed as president of EDC, breached his fiduciary duty to the corporation by forming a competing business with Lou A. Standiferd, which business was known as Advanced Diagnostic Center (ADC). The trial court dismissed EDC's claims against Standiferd and ADC. That decision is not an issue in this appeal. EDC's appeal was transferred to this court pursuant to K.S.A. 20-3018(c).

Dr. Wilson and Dr. Benson Powell, who are licensed to practice medicine and surgery in Kansas, formed a partnership in 1977. In 1983 the partnership was incorporated as Vascular Diagnostic Center, P.A., a professional corporation. The articles of incorporation and the certificate issued by the Kansas State Board of Healing Arts were filed with the Kansas Secretary of State. The articles of incorporation restricted the directors and ownership of the corporation stock to persons licensed to practice medicine or professional nursing in the State of Kansas. All stock certificates issued by the corporation were required to state that "the ownership and transfer of this stock and the rights and obligations of stockholders are subject to the limitations and provisions of the professional corporation law of Kansas."

In 1985, relying on advice of counsel, Dr. Wilson and Dr. Powell, filed Restated Articles of Incorporation as a general corporation with the secretary of state and changed the name of the corporation to Early Detection Center, Inc. The articles of incorporation were amended to allow individuals not licensed to practice medicine to be directors and own stock in the corporation. Dr. Powell and Dr. Wilson sold 40% of their stock to C. W. Hicks and Harvey Doud. Neither Hicks nor Doud were licensed to practice medicine.

Since 1986, EDC's only business consisted of providing noninvasive vascular testing medical services.

On January 9, 1987, Wilson was removed as president and CEO of EDC because of disagreement by the other directors with Wilson's management policies. He remained a 30% share-

holder, a director, and co-medical director of EDC. On January 29, 1987, Wilson submitted to the corporation a letter of resignation effective immediately. On February 3, 1987, EDC rejected Wilson's resignation. Wilson was later removed from the Board of Directors on March 27, 1987.

Beginning in February 1987, Wilson started contacting hospitals served by EDC and suggesting they utilize the services of ADC. Subsequently, EDC noted an absence of requests for testing from these hospitals.

In April 1987, EDC filed this action, alleging Wilson breached his contract not to compete and interfered with EDC client hospitals by contracting with the hospitals on behalf of ADC to allow ADC to perform noninvasive vascular diagnostic services. Dr. Powell left EDC's employment on May 3, 1988, leaving EDC without a physician employed or affiliated with it. EDC has not conducted business since Powell left.

Both parties filed motions for summary judgment. The trial court found (1) EDC could not legally provide healing arts services, (2) EDC had no legitimate claim to profits derived from the practice of the healing arts, and (3) Dr. Wilson owed no fiduciary duty to EDC. The court dismissed EDC's other claims against Wilson and granted Dr. Wilson's motion for summary judgment.

A moving party is entitled to summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. The record must also reflect that the moving party is entitled to judgment as a matter of law. *Peoples Nat'l Bank & Trust v. Excel Corp.*, 236 Kan. 687, Syl. ¶ 5, 695 P.2d 444 (1985). The burden of proving that no genuine issue of material fact exists is on the moving party. The record is viewed in the light most favorable to the party against whom the motion is directed. The granting of summary judgment is improper where there are genuine issues of material fact which are undetermined. *Willard v. City of Kansas City*, 235 Kan. 655, 657, 681 P.2d 1067 (1984). If factual issues do exist, they must be material to the case to preclude summary judgment. *Bacon v. Mercy Hosp. of Ft. Scott*, 243 Kan. 303, 307, 756 P.2d 416 (1988).

EDC asserts a general corporation can lawfully provide medical services by employing licensed physicians. It concludes that if a general corporation can lawfully provide medical services, then Dr. Wilson breached his fiduciary duty to EDC.

EDC's articles of incorporation state its business is "[t]o render two types of professional services, nursing and the practice as physicians, surgeons, or doctors of medicine." Its 1986 annual report stated the nature of its business is "[m]edical services performing noninvasive peripheral vascular testing, echocardiography testing and general ultrasound testing". The 1987 and 1988 annual report described the business is to provide "[m]edical services, diagnosis and treatment."

The practice of healing arts includes

"any system, treatment, operation, diagnosis, prescription, or practice for the ascertainment, cure, relief, palliation, adjustment, or correction of any human disease, ailment, deformity, or injury, and includes specifically but not by way of limitation the practice of medicine and surgery; the practice of osteopathic medicine and surgery; and the practice of chiropractic." K.S.A. 65-2802(a).

The Kansas Healing Arts Act prohibits any person from engaging in the practice of any branch of the healing arts, unless the person obtains a license. K.S.A. 65-2803.

The Kansas Healing Arts Act authorizes any person of legal age, who successfully completes an examination, to obtain a license. K.S.A. 65-2804 and K.S.A. 65-2831. Applicants taking the examination must file their name, age, place of birth, school, and date of graduation, and demonstrate ability to take the examination. K.S.A. 65-2808, K.S.A. 65-2824, K.S.A. 65-2825, and K.S.A. 65-2827. Since the enactment of R.S. 1923 § 65-1001, which required examination and registration of doctors of medicine and surgery, only individuals can be licensed to practice the healing arts.

In *Winslow v. Board of Dental Examiners*, 115 Kan. 450, 452, 233 Pac. 308 (1924) the Board revoked Winslow's license to practice dentistry for practicing under the name of another. Winslow, a licensed dentist, was employed by a foreign corporation authorized to do business in Kansas. The corporation paid Winslow a salary and commissions for his dental work on the corporation's clients. The *Winslow* court noted that "[c]orporations may not be

graduated from dental colleges, they have neither learning nor skill, and they may not be examined, registered or licensed as dentists. Therefore, the legislature does not permit the organization of a domestic corporation to practice dentistry." The court approved the Board's revocation of Winslow's license to practice.

In *State ex rel. Beck v. Goldman Jewelry Co.*, 142 Kan. 881, 884, 51 P.2d 995 (1935), it was determined that a corporation could not lawfully practice optometry.

In *State ex rel. Fatzer v. Zales Jewelry Co.*, 179 Kan. 628, 638, 298 P.2d 283 (1956), the court determined that, although a general corporation employs a licensed person to provide professional services, this does not grant the corporation the ability to engage in the practice of that profession without a license. The corporation was enjoined from the unlawful practice of optometry even though the optometry was performed by a licensed employee of the corporation.

EDC claims cases decided prior to the enactment of the Kansas Healing Arts Act in 1957 (K.S.A. 65-2801 *et seq.*), the adoption of the Professional Corporation Law of Kansas in 1965 (K.S.A. 17-2606 *et seq.*) and the General Corporation Code in 1972 (K.S.A. 17-6001 *et seq.*) are inapplicable. EDC argues any prohibition against a corporation's practice of the healing arts must be contained within the statutes, not common-law decisions this court made prior to the statutory enactments.

Under K.S.A. 17-2709, it is permissible for a person to incorporate as a professional corporation. Once it incorporated as a professional corporation, EDC had the statutory authority to amend its articles of incorporation and function as a general corporation under the General Corporation Code. K.S.A. 17-2717. EDC reasons that, if the statutes allow a viable professional corporation that provides medical services to change from a professional corporation to a general corporation, the general corporation is not precluded from providing medical services to patients if it employs individuals who are licensed to provide medical services. EDC's argument overlooks the interaction between the Professional Corporation Law, the Healing Arts Act, and the General Corporation Code.

The Healing Arts Act was passed in 1957, subsequent to our decision in *State, ex rel., Fatzer v. Zales Jewelry Co.*, 179 Kan.

628. The legislature, in drafting the language of the Healing Arts Act, did not define or broaden the word "person" such that its meaning differed from our decisions in *Winslow, Goldman,* and *Zales.*

Where a statute has been construed by the highest court having jurisdiction to pass on it, such constructions are as much a part of the statute as was written into it originally. All statutes are presumed to be enacted with full knowledge of the existing condition of the law and with reference to it. *State, ex rel., v. Moore,* 154 Kan. 193, 199, 117 P.2d 598 (1941). The legislature in drafting the language of the Healing Arts Act did not change the prior judicial interpretation that the licensure requirements apply to persons and not to corporations.

In 1965, the legislature enacted the Professional Corporation Law, K.S.A. 17-2706 *et seq.* K.S.A. 17-2707 states:

"As used in this act, unless the context clearly indicates that a different meaning is intended, the following words mean:

"(a) 'Professional corporation,' a corporation organized under this act.

"(b) 'Professional service,' the type of personal service rendered by a person duly licensed by this state as a member of any of the following professions, each paragraph constituting one type:

. . .

"(4) A chiropractor;

"(5) A dentist;

. . .

"(7) An optometrist;

"(8) An osteopathic physician or surgeon;

"(9) A physician, surgeon or doctor of medicine;

. . .

"(11) A podiatrist;

. . .

"(16) A registered physical therapist;

. . .

"(18) A registered professional nurse.

"(c) 'Regulating board,' the board or state agency which is charged with the licensing and regulation of the practice of the profession which the professional corporation is organized to render.

"(d) 'Qualified person':

"(1) Any natural person licensed to practice the same type of profession which any professional corporation is authorized to practice; or

"(2) the trustee of a trust which is a qualified trust under subsection (a) of section 401 of the internal revenue code of 1954, as amended, or of a contribution plan which is a qualified employee stock ownership plan under

subsection (a) of section 409A of the internal revenue code of 1954, as amended."

K.S.A. 17-2706 *et seq.* allows physicians, surgeons, or doctors of medicine to form professional corporations to provide medical services. Both the person and the professional corporation must be licensed. The regulating board of the profession must certify "that each of the incorporators is duly licensed to practice that profession" and the certification must be filed with the Secretary of State prior to the issuance of the certificate of incorporation. K.S.A. 17-2709(a).

A professional corporation may only issue shares of its stock to a "qualified person." A "qualified person" under the professional corporation act is any natural person licensed to practice the same type of profession which any professional corporation is authorized to practice or the trustees of certain employee pension trusts. K.S.A. 17-2707(d). The transfer or issuance of stock of a professional corporation is limited by the Act. There can be no transfer or issue of shares of the corporation "until there is presented to and filed with the corporation a certificate by the regulating board stating that the person to whom the transfer of stock is to be made or the shares of stock issued is duly licensed to render the same type of professional services as that for which the corporation was organized." K.S.A. 17-2712(a). The issuance or voluntary transfer of shares of the corporation to an unqualified person results in forfeiture of the corporate charter. K.S.A. 17-2718; K.S.A. 17-2719. See *Central State Bank v. Albright,* 12 Kan. App. 2d 175, 180, 737 P.2d 65 (1987).

A professional corporation, however, may elect to convert to a general corporation. K.S.A. 17-2717 states:

"The corporation may elect, at any time, upon the vote of the owners of a majority of the issued and outstanding shares, to amend its articles of incorporation so as to prohibit its continued operation under this chapter and to substitute therefor authority for the said corporation to function as a corporation under the general corporation laws, chapter 17, Kansas Statutes Annotated. If such election is made, a certificate of amendment shall be filed in the office of the secretary of state, setting forth the purposes for which the corporation shall continue in operation, together with any other amendments necessary to comply with the requirements of chapter 17 of the Kansas Statutes Annotated."

Although the statutory laws relating to general corporations are applicable to professional corporations, the professional corporation laws take precedence over any provision of the law regulating general corporations. K.S.A. 17-2708.

The legislature intended that any professional corporation, engaged in the practice of healing arts, which converts to a general corporation be prohibited from engaging in the practice of any branch of the healing arts. To insure the payment for personal injury or death arising out of the rendering of or the failure to render professional services by a health care provider, the legislature created the Health Care Stabilization Fund. See K.S.A. 1990 Supp. 40-3403. Under the Health Care Provider Insurance Availability Act, K.S.A. 40-3401 *et seq.*, (Act) a health care provider includes a person licensed to practice any branch of the healing arts by the state board of healing arts and a professional corporation organized pursuant to the professional corporation law of Kansas by persons who are authorized by such law to form such a corporation and who are health care providers as defined by K.S.A. 1990 Supp. 40-3401(f). A general corporation is not included within the definition.

In addition, the legislature's intent to not permit a general corporation such as EDC to engage in the practice of the healing arts is illustrated by the legislature's 1980 amendment to the technical professions licensing statutes that specifically authorize the practice of the technical professions by a general corporation which has unlicensed shareholders. L. 1980, ch. 244, § 1 (now K.S.A. 74-7036). Persons licensed in the technical professions (architects, surveyors, engineers) are among those who were permitted to incorporate under the Professional Corporation Law beginning with its enactment in 1965. K.S.A. 17-2707(b). The 1980 amendment authorized the State Board of Technical Professions to issue a certificate of authorization to general corporations. K.S.A. 74-7036(c).

The fact that the legislature made a specific grant of authority to the technical professions allowing licensing of general corporations with unlicensed shareholders, and the absence of a similar grant of authority under the Kansas Healing Arts Act, is a clear statement of public policy that general corporations who have

unlicensed directors or shareholders are not authorized to practice the healing arts. If the legislature had intended to permit this, it could easily have made the same provisions under the Healing Arts Act that it made under the Technical Professions Act. It chose not to do so.

The statutes regulating general corporations and professional corporations cannot restrict or limit the authority or duty of the regulating board for the licensing of persons rendering service or the practice of the profession. By statute, the regulating board of a profession is required to adopt and enforce its rules and regulations governing the practice of the profession. K.S.A. 17-2716.

The Board of Healing Arts has jurisdiction of proceedings to take disciplinary actions against any licensee practicing under the Act who has committed an act of unprofessional or dishonorable conduct. K.S.A. 1990 Supp. 65-2838. The Healing Arts Act prohibits a licensed person from allowing another person or organization to use the licensee's license to practice the healing arts. K.S.A. 1990 Supp. 65-2837(b)(15). In addition, the inclusion of an unlicensed shareholder in the professional corporation results in a violation of the Healing Arts Act prohibition on fee splitting in K.S.A. 1990 Supp. 65-2837(b)(19).

The prohibitions regarding the sharing of fees and the practice of a licensed person with an unlicensed person is similar to the rules that prohibit a lawyer from sharing legal fees with a non-lawyer or practicing law with any non-lawyer who is a shareholder, director, or officer of the professional corporation. MRPC 5.4 (1990 Kan. Ct. R. Annot. 275).

The legislative enactment of K.S.A. 1989 Supp. 17-2708 does not authorize the practice of medicine by a general corporation or allow a general corporation to provide professional services under the supervision of a licensed practitioner.

Next, EDC claims that even if it is a general corporation, the court erred by not applying the corporation by estoppel theory and by dismissing its claim of Wilson's tortious interference with a business relationship, breach of employment contract, breach of a covenant not to compete, and breach of fiduciary duty to EDC. The district court, in denying EDC's request for summary judgment, stated:

` "Corporation directors are generally under a strict fiduciary duty to their corporation and its stockholders. *Sampson v. Hunt,* 222 Kan. 268 (1977). However, before there can be a breach of fiduciary duty there must be a viable position of trust. *Parsons Mobile Products, Inc. v. Remmert,* 216 Kan. 256, 264 (1975). The plaintiff has controverted the issue of whether a viable position of trust existed by showing that defendant Wilson's capacity as director was reduced if not nominal at the time of the alleged breach. Therefore, the plaintiff's request for summary judgment on this issue is denied."

EDC urges this court to apply the theory of corporation by estoppel and cites other jurisdictions which have recognized the doctrine. *Willis v. City of Valdez,* 546 P.2d 570 (Alaska 1976) (a corporation's promoters and stockholders were estopped from denying its existence where they participated in holding it out as a corporation); *Jones v. Teilborg,* 131 Ariz. 240, 727 P.2d 18 (Ct. App. 1986) (shareholder lawyers were estopped from denying existence of corporation after deriving benefit from corporate status); *Shapoff v. Scull,* 222 Cal. App. 3d 1457, 272 Cal. Rptr. 480 (1990) (one who benefits from a corporate organization may be estopped from denying the corporation's existence).

"In certain circumstances an organization that may not be a de jure corporation—or perhaps not even a de facto corporation—may, so far as the parties to a given transaction are concerned, be regarded practically as a corporation, being recognized as such by the parties themselves. Although, an organization that has not complied with the conditions precedent to even de facto existence is not, for any purpose, a corporation, the incidents of corporate existence may exist as between the parties by virtue of an estoppel. Thus, besides de jure and de facto corporations, a third class known as 'corporations by estoppel' is sometimes recognized. The doctrine of corporation by estoppel rests wholly on equitable principles and operates to protect those who would otherwise suffer loss or incur liability because of their reliance in good faith on the representation of corporate existence." 18A Am. Jur. 2d, Corporations § 260.

"Generally, an organization that has held itself out as a corporation is estopped from denying the legality of its corporate existence. This doctrine is based on equitable principles, operating to protect persons who would otherwise suffer loss or incur liability because of their reliance in good faith on a false representation made by a person in charge of a business regarding the legal nature of the business and the organization with which the dealings are carried on. Thus, persons who hold themselves out as a corporation and do business as such and who commit a tort in the course of such business cannot set up lack of legal incorporation to escape liability therefor in an action brought against them as a corporation. A business is also estopped

from denying the existence and viability of its corporate entity for the purpose of defeating a subpoena served on it commanding it to testify and produce its records and papers. Similarly, a parent corporation is estopped from denying the corporate existence of its subsidiary as against persons who dealt with the corporation." 18A Am. Jur. 2d, Corporations § 269.

EDC's claim that the doctrine of corporation by estoppel should apply in this case is flawed. In 1985, EDC complied with the statutory requirements and became a general corporation. Though EDC's corporate existence had been forfeited for failure to file annual reports for the years 1984 through 1987, a certificate of Reinstatement, Restoration or Renewal was filed by EDC in August of 1987. EDC, an existing corporation, is not entitled to invoke the doctrine of corporation by estoppel.

In addition, it is well settled both in law and in equity that the courts will not aid either party to an illegal agreement. The law leaves the parties where it found them. Except in some cases where the parties are not in *pari delicto*, the rule applies even though both parties were party to the illegal contract. While it may not always seem an honorable thing to do, a party to an illegal agreement is permitted to set up the illegality as a defense even though the party may be alleging his or her own turpitude. *Brumm v. Goodman*, 164 Kan. 281, 286, 188 P.2d 913 (1948). In *Brumm*, the parties entered into a contract. Goodman agreed to allow Brumm to operate under an interstate motor carrier certificate issued to Goodman before securing approval of the transfer of the certificate by the interstate commerce commission. When Goodman refused to transfer the certificate as agreed, Brumm brought an action for specific performance of the contract or damages. The *Brumm* court observed that the agreement was illegal and determined that courts will not aid either party to an illegal agreement and will ordinarily leave the parties where it finds them.

Wilson cites *United Calendar Mfg. v. Huang*, 94 App. Div. 2d 176, 463 N.Y.S. 2d 497 (1983). In *Huang*, the plaintiff was a general corporation with the trade name of Marcy Medical and Dental. The corporation hired licensed medical and dental personnel to provide services to the corporation's patients. The corporation sued two dentists when they left its employment, claiming they had copied the corporation's patient lists and so-

licited and acquired the corporation's patients. The dentists moved for summary judgment, claiming that the corporation was not a medical professional corporation or not licensed; therefore it could not have patients. The lower court denied the dentists' claim. On appeal the New York appellate court reversed, finding that the patients, who were the subject matter of the lawsuit brought by the corporation, had patient-physician relationships with physicians who treated them and not with the corporation. It reasoned that the corporation, which provided medical, dental and professional services to the public by hiring professional personnel to whom patients were assigned, did not have any legal claim to the patients who were treated at its facility; therefore, it could not successfully maintain an action against dentist associates. It found that the parties' agreement was illegal and held that " 'the law will not extend its aid to either of the parties . . . or listen to their complaints against each other, but will leave them where their own acts have placed them.'." 94 App. Div. 2d at 180.

Here, EDC, a general corporation, agreed to provide medical services to third parties by hiring licensed medical practitioners. A general corporation is prohibited from providing medical services or acting through licensed practitioners; therefore, there could be no contract between the general corporation and the third parties to perform the services. Where the parties enter into an agreement that cannot be enforced, the courts will not aid either party to the prohibited contract and will ordinarily leave the parties where it finds them.

The district court properly refused to enforce the illegal contract by granting summary judgment. Affirmed.