No. 75,527

IN THE MATTER OF THE ACQUISITION OF LAND BY EMINENT DOMAIN. KANSAS GAS AND ELECTRIC COMPANY, *Plaintiff,* v. WILL INVESTMENTS, INC., *Defendant,* and SAD, L.C., *Appellee,* and MOHAMMED AGHAKANI, *Appellant.*

928 P.2d 73

Opinion filed December 6, 1996.

*Robert W. Kaplan,* of Kaplan, McMillan and Harris, of Wichita, argued the cause and was on the brief for appellant.

*John L. Kratzer, Jr.,* of Hershberger, Patterson, Jones & Roth, L.C., of Wichita, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

LARSON, J.: This case involves a unique set of facts wherein Mohammed Aghakani, the present owner of the underlying property,

appeals the trial court's determination that SAD, L.C., the owner of a retained right-of-way for utility purposes, is entitled to the entire proceeds of a condemnation award for the SAD easement taken by Kansas Gas and Electric Company (KG&E).

Our result being basically fact driven requires us to state in considerable detail the background giving rise to this litigation.

In late April 1994, SAD acquired fee simple title to the Southeast Quarter of Section 19, Township 28 South, Range 2 East, Sedgwick County, Kansas, intending to subdivide the property and offer it for sale at public auction. Prior to the intended sale, KG&E contacted SAD concerning its desire to acquire an easement for the installation of electric transmission lines across the north 50 feet of the south 70 feet of the property.

KG&E and SAD were unable to reach an agreement regarding compensation for a voluntary grant of the easement prior to a scheduled public auction of the property. Knowing that prospective purchasers must be informed of the pending negotiations with KG&E and fearing this would result in a greatly diminished sale, SAD decided to offer the land for sale subject to an easement in place corresponding to KG&E's proposed right-of-way.

To accomplish this, SAD granted a right-of-way, dated and recorded May 24, 1994, to Will Investments, Inc., to erect, install, and maintain electric and communication lines, with provisions identical to those in a KG&E easement. Will paid SAD $12,000 and agreed that SAD could repurchase the easement for the purchase price plus interest at 9%.

When the public auction was held 2 days later, auctioneer Gearl Bannon announced to all parties that SAD was retaining a utility easement, that the property was being sold subject to this easement, that SAD was negotiating with KG&E for the sale of the easement, and that the present owner was retaining the right to all proceeds from the sale of the easement. Aghakani purchased a tract at the auction, subject to the easement, for $69,500. The existence of the easement was shown on the title insurance commitment, and the deed conveying the property from SAD to Aghakani was subject to easements of record.

In early December 1994, Will executed and recorded a grant of right-of-way to SAD, identical to the previous grant from SAD to Will, in return for $12,595. On June 15, 1995, Will filed an assignment to SAD of all of its interest in the easement by a document conveying ownership based on the previous grant.

In early January 1995, KG&E commenced a condemnation action to acquire all interest in the retained right-of-way and the reversionary interests of the then fee owners of the property.

Aghakani retained counsel, had the property rezoned, and presented evidence of value at the appraiser's hearing. SAD, although properly notified, neither appeared nor responded. The appraiser's award, filed in April 1995, appraised the tract before the taking at $187,500 and after the taking at $157,985, awarding $29,515 in compensation for the condemnation of the easement. KG&E filed a timely notice of appeal of the award.

Aghakani moved for a determination of entitlement and disbursement of the appraiser's award. Will and SAD then claimed the funds, setting up the present dispute among the parties for resolution as required by K.S.A. 26-517. Will later filed a disclaimer of interest in the property.

The trial court heard the motions and entered findings of fact and conclusions of law determining that the easement was given for a lawful purpose and that the requirement that an easement owner be a licensed public utility before actually constructing, operating, or maintaining electric transmission lines was simply a condition precedent to the easement's enjoyment. The court noted the significant disparity of the price Aghakani paid for the land and the appraised value prior to the taking and found Aghakani paid a discounted price for the property and received the estate he bargained for at the auction. The trial court also ruled that Aghakani would be unjustly enriched if allowed to receive any portion of the condemnation award.

The trial court further concluded that the conveyance from Will to SAD was sufficient to convey ownership to SAD, that KG&E only obtained the existing easement, and that Aghakani held no interest in the easement at the time of the taking. The court ordered the entire award to be distributed to SAD. The court later

modified the order to rule that the award included damages for diminution in value of the remainder interest.

Proceedings were stayed pending the filing of an appeal, which was transferred to this court pursuant to K.S.A. 20-3018(c).

In commencing our analysis of the issues, we first restate our basic standard of review: " 'Where the trial court has made findings of fact and conclusions of law, the function of this court on appeal is to determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law.' " *Gillespie v. Seymour*, 250 Kan. 123, 129, 823 P.2d 782 (1991). The first is a deferential standard of review, and the second involves a question of law based upon given facts. *Chrispens v. Coastal Refining & Mktg., Inc.*, 257 Kan. 745, 762, 897 P.2d 104 (1995). Further, the interpretation and legal effect of written instruments are matters of law, *Dutta v. St. Francis Regional Med. Center, Inc.*, 254 Kan. 690, 693, 867 P.2d 1057 (1994), and our standard of review is unlimited on a question of law. *Gillespie v. Seymour*, 250 Kan. 123, Syl. ¶ 2.

*Were the deeds granting a right-of-way from SAD to Will and Will to SAD and the assignment of the right-of-way from Will to SAD illegal contracts and, therefore, void?*

Aghakani first contends that the grants of the right-of-way are illegal contracts because neither party was a public utility as defined by K.S.A. 66-104, the grants involved an attempt to erect an electric transmission line without being a properly certified public utility under K.S.A. 66-131, and the transfer of the grants began site preparation for an electric transmission line without the proper permit as required by K.S.A. 66-1,178. We hold that each of these contentions are without merit.

Neither Will nor SAD generated or sold electricity, nor did they attempt to do so by acquiring the right to install electric transmission lines over the property. Neither Will nor SAD attempted to transact business without a proper certificate, nor did they do any act which is in violation of the permit requirement of K.S.A. 66-1,178.

The two Kansas cases Aghakani cites, *Early Detection Center, Inc. v. Wilson*, 248 Kan. 869, 811 P.2d 860 (1991), and *Brumm v. Goodman*, 164 Kan. 281, 188 P.2d 913 (1948), may support the contention that contracts made to perform illegal acts are not enforceable, but there is no showing that the agreements in issue in our case violated any of the statutes cited or were against public policy. Contracts are presumed legal and the burden rests on the party challenging the contract to prove it is illegal. See *In re Estate of Shirk*, 186 Kan. 311, 326, 350 P.2d 1 (1960). The contracts in issue were of record, fully disclosed, and clearly understandable, and the parties never attempted to perform them in any illegal or improper manner.

In a case involving a contract for sale of water where the seller had not obtained necessary permits as a public utility, *Wycoff v. Quick Way Homes, Inc.*, 201 Kan. 442, 447, 441 P.2d 886 (1968), we held that a "contract for sale of water does not violate any requirement of public policy and is not illegal per se." Easements of a commercial nature similar to the right-of-way here have long been considered an exception to the general rule that easements in gross are not transferable, and a long history of allowing the transfers of such servitudes exists. See 3 Powell on Real Property § 34.16, pp. 34-220-222 (1996); Restatement of Property § 489 (1944). The right-of-way grants in question herein are not illegal contracts, and no fact exists showing any performance occurred thereunder of an illegal nature.

*Did SAD lack any interest in the subject property at the time of the taking by eminent domain because the Will to SAD grant in December 1994 was invalid?*

Aghakani contends the Will to SAD grant of right-of-way, which contained a statement granting a right-of-way "along, under, across and over certain lands owned by Grantor" is invalid because at that time Will did not own such lands. The grant of right-of-way document was identical in wording to that originally granted from SAD to Will, and the transfer was confirmed by an assignment some 6 months later. At no time did Will own any interest in the underlying property, but the complained-of wording is merely a restatement

of the prior grant and does not invalidate the document's clear intent.

As we have previously stated, where the terms of a written instrument are involved, we have the same duty as the trial court to determine its validity. See *Shepard, Executrix v. John Hancock Mutual Life Ins. Co.*, 189 Kan. 125, 130, 368 P.2d 19 (1962).

In *Hall v. Mullen*, 234 Kan. 1031, 1038, 678 P.2d 169 (1984), we looked to the intention of the parties to ascertain the interest conveyed. In *D. M. & A. Rly. Co. v. Lockwood*, 54 Kan. 586, 591, 38 Pac. 794 (1895), we stated a right-of-way deed to a railroad would not be declared void for uncertainty when the intent became apparent in light of contemporaneous facts and circumstances. It is clear that the grant of right-of-way only attempted to convey the easement which Will did own and did not attempt to convey to SAD anything that Will did not own. Although the right-of-way grants were identical and the Will to SAD grant should have been revised, reason requires that the grant be construed in the manner as was clearly intended, making Aghakani's contention untenable.

Aghakani's additional contention that the May 1995 assignment could have no effect on the eminent domain award is likewise without merit, as the assignment clearly showed Will's original intent to transfer the right-of-way to SAD and did not divest SAD of any right to receive the condemnation award.

*Was the right-of-way a valuable property right of SAD or Will at the time of taking by KG&E?*

Aghakani argues that because SAD and Will were not public utilities and, therefore, were prohibited from building electric transmission lines, the right to do so was of no compensable value to them. Aghakani is essentially asking us to ignore the value of this easement as a transferable commercial interest. This right-of-way obviously had value to KG&E, though had KG&E elected not to acquire the interest, the right-of-way would have been for all practical purposes without value to SAD or Will. Yet, as no prohibition bars the conveyance or transfer of this right-of-way to other entities, particularly to those with the ability to obtain the proper certification to enjoy its use, we cannot find that this easement had

no value to SAD or Will simply because they were not certified to exercise their rights under it.

Aghakani's statement that KG&E actually condemned his retained right as the fee owner to sell another right-of-way to KG&E is wrong. The eminent domain petition specifically sought to acquire the right-of-way already in existence, and such was the interest KG&E acquired.

*Should the award be apportioned between SAD, as owner of the easement, and Aghakani, as owner of the fee simple title subject to the easement?*

Aghakani attempts to bootstrap his apportionment argument to a request in KG&E's condemnation petition seeking to acquire the "reversionary rights of the current owners which have not heretofore been purchased by grant." Somehow this led the trial court to conclude, in its amended ruling, that the appraiser's award included damages for diminution in value of the remainder interest. This gives rise to Aghakani's contention that because the economic detriment of the easement is on the remaining acreage, even though the property was purchased subject to the easement, he is entitled not only to the reduction in the purchase price he obtained, but also to the value of this interest as was established by virtue of the condemnation. This contention is simply erroneous.

KG&E has no right to acquire the fee simple title to the property. See *Board of Education of U.S.D. 512 v. Vic Regnier Builders, Inc.*, 231 Kan. 731, 734, 648 P.2d 1143 (1982), where we recognized the following principles:

"(1) The general rule is that only such an estate in the property sought to be acquired by eminent domain may be taken as is reasonably necessary for the accomplishment of the purpose in aid of which the proceeding is brought. [Citations omitted.]

. . . .

"(3) The general rule is that eminent domain statutes will be construed to authorize only the taking of an easement on or title to land sufficient for the public use intended rather than a fee title, unless the statute clearly so provides, either expressly or by necessary implication. [Citations omitted.]"

As an easement is sufficient for KG&E's intended use of this land, acquisition of the fee simple title is unnecessary and imper-

missible. All KG&E acquired was the easement and the rights thereunder previously owned by SAD, which is entitled to the entire amount of the appraiser's award.

The wording of the eminent domain petition specifically states that KG&E seeks to acquire all of the right, title, and interest in and to the existing right-of-way, as well as the reversionary rights of the current owners which have not heretofore been purchased. As we have stated above, because no fee simple title can be obtained through eminent domain, no binding interest in any reversionary rights of Aghakani could be obtained by KG&E. When and if the easement is abandoned, the property held by Aghakani or his successors in interest will be relieved of its burden, and the rights and claims of KG&E or its successors and assigns will be extinguished.

The trial court properly determined the right taken in the eminent domain proceeding was the grant of right-of-way retained by SAD at the time the property was conveyed to Aghakani and properly apportioned all of the award to SAD. To the extent the appraiser's report might appear to recognize some rights to the award in Aghakani, which do not exist, it must be held the trial court's amended ruling has no effect upon the apportionment of the award.

Under the statutory procedure, it was proper for the trial court to have allowed SAD to draw down the amount paid into court. It will remain for SAD and KG&E to litigate or settle the pending appeal.

*Did the trial court err by applying a theory of unjust enrichment to deny Aghakani a share of the award?*

Because we have previously held the trial court's decision is justified on legal grounds, it is not essential to our affirmance to base our decision on this issue. However, the trial court found that the disparity between the price Aghakani paid for the tract and its appraised value before and after the taking reflected a discounted value of the land at the auction because of the existence of the easement. It would logically follow that it would be unjust to allow Aghakani to obtain the benefit of purchasing the land subject to

the servitude at a reduced cost and then to doubly compensate him by allowing him to receive any amount of the appraiser's award.

Somewhat analogous to our situation is *Dillon Investment Co. v. Kinikin,* 172 Kan. 523, 527-28, 241 P.2d 493 (1952), where we held:

> "The all important and controlling reason why plaintiff may not quiet his title and foreclose the rights of Kinikin and his successors in title is that years after the death of Kinikin, the plaintiff accepted a deed in which validity of the exceptions and reservations as to a right of way were recognized and made part and parcel of it. Under the circumstances the grantee, appellee herein, is estopped to question validity of the exceptions and reservations. [Citations omitted.]"

Here, the equitable principle of unjust enrichment may form an additional justification for the trial court's ruling, but is not essential to the decision, and the trial court did not err in considering it.

Affirmed.

ABBOTT, J., not participating.

RICHARD W. WAHL, Senior Judge, assigned.