(130 P.3d 1215)

No. 94,126

·Caring Hearts Personal Home Services, Inc., *Appellee*, v.
Delores Hobley and Latrice Hardy, *Appellants*.

Opinion filed March 24, 2006.

*James H. Scott*, of Kansas City, Missouri, for appellants.

*Rick Rehorn*, of Thomas Richard Rehorn, III, P.A., of Kansas City, Kansas, for appellee.

Before GREEN, P.J., MCANANY, J., and BRAZIL, S.J.

MCANANY, J.: Delores Hobley and Latrice Hardy appeal an order of the district court enforcing a noncompete agreement. Finding no error, we affirm.

Caring Hearts Personal Home Services, Inc. (Caring Hearts), located in Kansas City, Kansas, is a certified home health care agency licensed in Kansas and Missouri. It provides in-home nursing services to elderly patients throughout the Kansas City area. Its services are usually paid for by Medicare. It is authorized by Medicare to provide these services within 100 miles of its offices in Kansas City, Kansas. Its patients are referred by physicians who create plans that dictate the treatments the patients are to receive from Caring Hearts. Hobley and Hardy (mother and daughter who are licensed practical nurses) began working as independent contractors for Caring Hearts on February 10, 2003.

Hobley and Hardy chose to work for Caring Hearts as independent contractors as opposed to employees. They sought and obtained advice of counsel before signing their contracts with Caring Hearts. They contracted with Caring Hearts to make in-home visits to patients and to treat them according to a doctor's orders.

They were each paid $30 per visit for patients they had referred to the agency and $25 per visit for patients that they had not referred to the agency. All of the nurses that worked for Caring Hearts were given a $100 referral fee for each patient they recruited for Caring Hearts.

As a condition of working for Caring Hearts, Hobley and Hardy also signed noncompetition agreements which bar them, for a period of 2 years after leaving Caring Hearts, from treating patients they treated during the time they contracted with Caring Hearts. The agreement also contained a 100-mile radius restriction, which is of no moment in this appeal since it was not considered by the district court when it enjoined the competitive activities of Hobley and Hardy.

In December 2003, Hobley and Hardy expressed concerns about whether the patient referral fees violated federal Medicare laws and regulations. They also questioned whether their independent contractor status violated Medicare regulations. When the issues were not resolved to their satisfaction, they terminated their contracts with Caring Hearts in July 2004 and began working for another home health care agency called MPSS, where they continued to treat patients they had treated while under contract with Caring Hearts. Caring Hearts brought this action to enjoin them from this conduct alleging it was in violation of the noncompete agreement.

The district court overruled the motion to dismiss of Hobley and Hardy, which was based upon the claim that the court did not have long-arm jurisdiction over them because of their Missouri residency and Missouri licenses and the fact that the patients they visited were all located in Missouri. The district court also overruled their summary judgment motion. The case was tried to the court.

At trial, Dr. Lawrence Craig, Caring Hearts' president, testified that he contacted the Office of the Inspector General which oversees Medicare Regulations and Guidelines. An attorney in that office advised Craig that Caring Hearts' referral fees were not in violation of federal law. Craig also confirmed this with local attorney Bob Beechy, who specializes in Medicare regulations. He also

testified to the supervision over Hobley and Hardy by a patient's attending physician and a registered nurse. Kimberly Craig, an LPN employed by Caring Hearts, testified that she observed Hobley and Hardy treating patients who had previously been patients of Caring Hearts. Hardy and Hobley admitted they continued to treat a number of Caring Hearts' patients covered by the noncompete agreement after going to work for MPSS.

The trial court found in favor of Caring Hearts and enjoined Hobley and Hardy for a period of 2 years from continuing to treat certain specified patients whom they had cared for while working for Caring Hearts. Hobley and Hardy now appeal.

### *Personal Jurisdiction*

We have unlimited review over the legal question of whether the district court had long-arm personal jurisdiction over Hobley and Hardy. See *Mid-Continent Specialists, Inc. v. Capital Homes*, 279 Kan. 178, 185, 106 P.3d 483 (2005). In conducting this review we first determine if there is jurisdiction under K.S.A. 60-308(b), the Kansas long-arm statute. If so, we then must determine if the exercise of personal jurisdiction complies with the due process requirements of the Fourteenth Amendment to the United States Constitution. In the first part of this analysis, we liberally construe K.S.A. 60-308(b) to assert personal jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause of the United States Constitution. *Kluin v. American Suzuki Motor Corp.*, 274 Kan. 888, Syl., 56 P.3d 829 (2002).

K.S.A. 60-308(b)(5) states that any person, whether or not a resident of Kansas, submits to the jurisdiction of this state for any cause of action arising from entering into an express or implied contract with a resident of this state, by mail or otherwise, to be performed in whole or in part by either party in this state.

While arguing that they only performed nursing services in Missouri, Hobley and Hardy ignore the issue of any contract performance by Caring Hearts. In fact, all of Caring Hearts' performance of this Kansas contract occurred in Kansas. Accordingly, the district court did not err in finding that the Kansas long-arm statute applied.

Moving to the second step in this jurisdictional analysis, we must examine whether Hobley and Hardy had the minimum contacts with Kansas necessary to justify extending long-arm in personam jurisdiction to them.

" '[T]here are three basic factors which must coincide if jurisdiction is to be entertained over a nonresident on the basis of transaction of business within the state. These are (1) the nonresident must purposefully do some act or consummate some transaction in the forum state; (2) the claim for relief must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation. [Citations omitted.]' " *St. Francis Mercantile Equity Exchange, Inc. v. Newton,* 27 Kan. App. 2d 18, 22, 996 P.2d 365 (2000).

Here, Hobley and Hardy purposefully entered into contracts in Kansas with a Kansas resident. Caring Hearts' claim for relief arose out of the claimed breach of those contracts. Hobley and Hardy presented no evidence that assumption of jurisdiction by Kansas courts caused them any inconvenience or hardship. They reside in Kansas City, Missouri. The patients they treat are in the Kansas City area. Having to travel with their witnesses to downtown Kansas City, Kansas, as opposed to downtown Kansas City, Missouri, for court proceedings is certainly insignificant. The district court's assumption of jurisdiction in this instance does not offend traditional notions of fair play and substantial justice. The district court had personal jurisdiction over Hobley and Hardy.

### Viability of the Noncompete Agreements

### 1. Claimed Illegal Kickbacks

Hobley and Hardy claim their employment relationship with Caring Hearts was illegal because Caring Hearts paid them a fee for patient referrals in violation of the anti-kickback provisions of 42 U.S.C. §1320a-7b (2000). They also claim that their independent contractor status violated the supervision requirements of 42 C.F.R. 484.30 (2005). They claim these infirmities render their noncompete agreements unenforceable.

Hobley and Hardy misplace their reliance on the applicability of the rule in *Early Detection Center, Inc. v. Wilson,* 248 Kan. 869, 811 P.2d 860 (1991). In *Wilson,* Dr. Wilson and another medical doctor formed a professional corporation for their medical practice. Ownership of an interest in the corporation initially was limited to doctors licensed to practice medicine in Kansas. The articles of incorporation were then amended to change the professional corporation to a general corporation and to allow persons not licensed to practice medicine to become owners of the corporation. Wilson then left the corporation to begin his own medical practice in violation of a covenant not to compete with the corporation, and was sued. The Kansas Supreme Court held that the corporation, as reformed, with directors and shareholders not licensed to practice the healing arts, could not provide medical services or act through licensed practitioners in an attempt to do so. Thus, if the corporation could not lawfully engage doctors to provide medical services, it likewise could not lawfully prevent doctors from engaging in their own medical practices and thereby competing with the corporation in an activity that the corporation was not permitted by law to do.

Hobley and Hardy do not claim that Caring Hearts had no authority to provide home health services through nurses it retained. Unlike in *Wilson,* Caring Hearts is not seeking to enjoin competitive activity in an arena in which it is not entitled to operate.

While the rule in *Wilson* has no application, Hobley and Hardy would have us vitiate their noncompetition agreements because of a claimed regulatory violation incidental and tangential to the basic purpose of their contracts. Hobley and Hardy point to no binding case authority in point that would bring about this drastic result. Further, they ignore the significant evidence in the record that the referral arrangement at Caring Hearts is not illegal. There was evidence presented that experts engaged in either the interpretation or enforcement of Medicare's requirements examined the Caring Hearts arrangement and found it not to be in violation.

If we assume for the moment, however, that the Caring Hearts arrangement violates federal Medicare laws and regulations, what are the consequences for Hobley and Hardy? If they believed this

compelled them not to be a party to such an arrangement, they had three options: (1) continue to recommend the services of Caring Hearts to prospective patients but decline the $100 fee and the $5 per visit bump; (2) continue to provide in-home services but refuse to make recommendations and refuse the $5 per visit bump for past referrals; or (3) terminate their relationship with Caring Hearts. Having chosen option (3), however, they are not free to ignore their obligations under the noncompete agreements.

The noncompete agreements state:

"This agreement is in addition to Contracting and does not purport to include all of the terms of the contractor relationship. It is intended, however, that the obligation of the parties to adhere to and abide by the terms of this Agreement is unconditional and does not depend on the performance or non-performance of any terms, duties, or obligations not specifically recited in this Agreement."

The noncompetition agreements do not extend only to patients referred to Caring Hearts by Hobley and Hardy, but to all Caring Hearts' patients they cared for during the course of their relationship with Caring Hearts. It is that universe of patient relationships the agreements intend to protect. Caring Hearts' protectable interest is in its relationship with all of these patients, not merely the ones that Hobley and Hardy claim came to Caring Hearts under what they perceive to be a cloud of illegality. Hobley and Hardy do not claim that providing home health services to Medicare-eligible patients is illegal. They do not claim they were not paid pursuant to their contracts for the work they did. As stated in *Weber v. Tillman*, 259 Kan. 457, Syl. ¶ 6, 913 P.2d 84 (1996):

"It is the duty of the courts to sustain the legality of contracts in whole or in part when fairly entered into, if reasonably possible to do so, rather than to seek loopholes and technical legal grounds for defeating their intended purpose. The paramount public policy is that freedom to contract is not to be interfered with lightly."

This attack on the viability of the noncompete agreements based upon claims of illegal kickbacks fails.

2. *Independent Contractor Status*

Hobley and Hardy next argue that their independent contractor status with Caring Hearts violates 42 C.F.R. § 484.30, which ap-

plies to home health care agencies that receive payments from Medicare. 42 C.F.R. § 484.30 states:

"The HHA [home health care agency] furnishes skilled nursing services by or under the supervision of a registered nurse and in accordance with the plan of care.

"(a) *Standard: Duties of the registered nurse.* The registered nurse makes the initial evaluation visit, regularly reevaluates the patient's nursing needs, initiates the plan of care and necessary revisions, furnishes those services requiring substantial and specialized nursing skill, initiates appropriate preventive and rehabilitative nursing procedures, prepares clinical and progress notes, coordinates services, informs the physician and other personnel of changes in the patient's condition and needs, counsels the patient and family in meeting nursing and related needs, participates in in-service programs, and supervises and teaches other nursing personnel.

"(b) *Standard: Duties of the licensed practical nurse.* The licensed practical nurse furnishes services in accordance with agency policies, prepares clinical and progress notes, assists the physician and registered nurse in performing specialized procedures, prepares equipment and materials for treatments observing aseptic technique as required, and assists the patient in learning appropriate self-care techniques."

Hobley and Hardy argue that since an independent contractor is defined as one who contracts to do certain work according to his or her own methods, without being subject to the control of the employer except as to the results or product of his or her work (see *Hartford Underwriters Ins. Co. v. Kansas Dept. of Human Resources*, 272 Kan. 265, 32 P.3d 1146 [2001]), an LPN cannot provide Medicare-paid home health services while working as an independent contractor without violating 42 C.F.R. § 484.30.

Hobley and Hardy do not argue that they were not properly supervised, but that the very nature of their independent contractor status makes their employment arrangement with Caring Hearts illegal. They argued in support of their summary judgment motion:

"[A]s a matter of federal law, the defendants Hobley and Hardy cannot be delegated, via Plaintiff, the autonomy necessary to achieve the status of an independent contractor. Thus the contract into which they entered is illegal and as a matter of public policy should be voided, since the result of such contract would be harmful to the health, safety and well-being of the public."

This topsy-turvy argument is misguided. When it comes to patient care, the hierarchy in the Caring Hearts system is attending physician, registered nurse, then licensed practical nurse. Hobley and Hardy do not contest that they were supervised in a manner consistent with the Medicare requirements, but argue that such supervision conflicted with their independent contractor status. However, they do not claim that they quit because Caring Hearts refused to give them the autonomy that their independent contractor status entitled them to have. What troubled them was the label on their relationship with Caring Hearts, regardless of how that relationship played out in their daily contact with patients. Their argument is one of form over substance. The home health services they provided were properly supervised in accordance with Medicare standards.

*Standards for Injunctive Relief*

Hobley and Hardy next argue that the district court erred in granting injunctive relief because the noncompete agreement was overly broad, unreasonable, and contrary to public policy. It is important to note that they do not challenge the sufficiency of the evidence to support the injunction. However they do criticize the district court for performing its analysis without specific reference on the record to any of the *Weber* factors. While it is always better to do so, the district court need not spell out its detailed analysis under these circumstances. On review our court must presume the district court found all facts necessary to support its judgment. *Graham v. Cirocco*, 31 Kan. App. 2d 563, Syl. ¶ 3, 69 P.3d 194, *rev. denied* 276 Kan. 968 (2003).

We examine de novo the question of whether the agreements violate public policy. *Weber*, 259 Kan. 457, Syl. ¶ 1. The test for validity is whether the competitive restraint is reasonable under the circumstances and not adverse to the public welfare. While we defer to the basic freedom of contracting parties, only legitimate business interests may be protected by a noncompete agreement since such an agreement is in derogation of the system of free and open competition that is the hallmark of our society. And since noncompetition agreements in an employer-employee setting can

have draconian results for a suddenly unemployable former employee, such agreements are strictly construed against the employer.

In testing an agreement's reasonableness, we seek to answer the following questions: (1) Does the covenant protect a legitimate business interest of the employer? (2) Does the covenant create an undue burden on the employee? (3) Is the covenant injurious to the public welfare? (4) Are the time and territorial limitations contained in the covenant reasonable? See *Weber*, 259 Kan. 457, Syl. ¶ 5.

As to question (1), it is well established that an employer has a legally protectable interest in customer contacts and customer relationships that justifies such a restraint. See *Eastern Distributing Co., Inc. v. Flynn*, 222 Kan. 666, 671, 567 P.2d 1371 (1977). Caring Hearts had a legitimate business interest to protect by restricting the ability of Hobley and Hardy to compete after they ended their relationship with Caring Hearts by soliciting and serving Caring Hearts' customers.

With regard to question (2), the agreements prevent Hobley and Hardy from providing nursing services for 2 years to clients that they had worked with while they were under contract with Caring Hearts. They do not prevent Hobley and Hardy from obtaining other employment in the home health care industry or in caring for other patients. The court's injunction applied to about 80 patients. Hobley and Hardy have the entire remainder of the population of the metropolitan Kansas City area (or elsewhere, for that matter) to draw upon for prospective client-patients. There is nothing in the record to indicate that their relationship with MPSS, their subsequent employer, was jeopardized by the threat of an injunction being entered against them. Both Hobley and Hardy are making more money per patient visit now than they did while they were engaged by Caring Hearts. The noncompete agreement does not create an undue burden on Hobley or Hardy.

As to question (3), there is no evidence that public welfare would be harmed by enforcement of the agreements. Hobley and Hardy did not present evidence at trial that the desires of any of their former patients would be thwarted if an injunction were issued and

they were denied care that they specifically desired to receive from Hobley and Hardy. But even if there were such evidence, the issue is public welfare, not the private welfare of an individual patient. Hobley and Hardy fail to identify any evidence in the record that the welfare of the public would be jeopardized by enforcement of the agreement because of a shortage of LPNs working in the home health care industry. There is no evidence that enforcement of the noncompete agreement is injurious to the public welfare.

With respect to question (4), the 2-year time period of the restraint is clearly within the accepted range for the duration of post-employment restraints in situations similar to this. See *Graham*, 31 Kan. App. 2d 563, Syl. ¶ 7. This time limitation is not unreasonably broad. The 100-mile radius of the restraint is not at issue since the agreement and the court's injunction cover specific patients served by Hobley and Hardy in the past in the Kansas City area.

The district court did not err in enforcing the noncompete agreements.

Affirmed.