(937 P.2d 21)

No. 75,910

SUNFLOWER PARK APARTMENTS, *Appellee,*

v. DENISE JOHNSON, *Appellant.*

Opinion filed April 25, 1997.

*Stephen M. Kirschbaum*, of Wyandotte-Leavenworth Legal Services, of Kansas City, for appellant.

No appearance for appellee.

Before ELLIOTT, P.J., GREEN, J., and JOHN E. SANDERS, District Judge, assigned.

GREEN, J.: Denise Johnson appeals a trial court judgment in favor of her landlord, Sunflower Park Apartments (Sunflower), for rents owed. Johnson argues that her Section 8 status, a HUD/Housing Authority contract with Sunflower, and federal law preclude her liability for additional rents. We agree. Accordingly, we reverse the judgment of the trial court.

The facts of this case are not in dispute. Johnson's rent is subsidized by the Section 8 Housing Program. Under this program, Johnson is responsible for a percentage of the total rent due on her unit. The remainder is paid by a federal subsidy, in this case, the Kansas City, Kansas, Housing Authority (Housing Authority), a Public Housing Agency (PHA). Although Johnson timely paid her portion of the rent each month, the Housing Authority did not pay the subsidy for August or September 1995 because Sunflower

failed to maintain the premises in accordance with federal housing quality standards. After the unit was repaired, the Housing Authority resumed the subsidy payments. However, the Housing Authority did not make subsidy back payments. On November 17, 1995, Sunflower sued Johnson for the back payments, possession of the unit, and late fees. Johnson denied that it was her obligation to make the payments. Johnson also filed a counterclaim alleging that Sunflower breached its contract in failing to maintain the unit in conformance with federal standards.

In determining that the Housing Authority had terminated its contract with Sunflower, the trial court concluded that the lease between Sunflower and Johnson had also been terminated. Consequently, the lease provisions that protected Johnson from paying more than $75 per month in rent were no longer valid. Nevertheless, the court determined that the broken appliances and poor maintenance lowered the rental value. The court denied Sunflower possession of the rental unit but granted it a judgment against Johnson in the amount of $450. The court further reduced that amount by the $150 Johnson had paid during the 2-month period. Johnson timely appeals from the $300 judgment against her.

On appeal, Johnson argues that the trial court erred in finding that the contract had been terminated. Sunflower did not file an appellate brief. Reviewing a trial court's findings of fact with regard to a written contract, our standard of review is as follows:

" 'Where the trial court has made findings of fact and conclusions of law, the function of this court on appeal is to determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law.' [Citation omitted.]" *Gillespie v. Seymour*, 250 Kan. 123, 129, 823 P.2d 782 (1991).

"Further, the interpretation and legal effect of written instruments are matters of law, *Dutta v. St. Francis Regional Med. Center, Inc.*, 254 Kan. 690, 693, 867 P.2d 1057 (1994), and our standard of review is unlimited on a question of law. *Gillespie v. Seymour*, 250 Kan. 123, Syl. ¶ 2." *Kansas Gas & Electric Co. v. Will Investments, Inc.*, 261 Kan. 125, 128, 928 P.2d 73 (1996). "Regardless of the construction given a written contract by the trial court, an appellate court may construe a written contract and determine its legal ef-

fect." *Federal Land Bank of Wichita v. Krug*, 253 Kan. 307, Syl. ¶ 2, 856 P.2d 111 (1993).

At trial, Sunflower's theory of the case was that its lease with Johnson and its contract with the Housing Authority had been terminated. In closing argument, Sunflower asked the court to determine a fair rental value for the 2-month period and to grant a judgment in that amount. Conversely, Johnson argued that there was no evidence that the contract between Sunflower and the Housing Authority had been terminated. Johnson emphasized that she had consistently met her obligation under the lease by paying her portion of the rent. Johnson argued that the 2 months of subsidy payments had merely been abated as contemplated by the contract, the lease agreement, and federal law. In finding for Sunflower, the trial court based its ruling upon a letter from the Housing Authority to Johnson, which stated:

"The unit you are now residing in did not meet Housing Quality Standards. By Federal law we may not make rent assistance payments for a unit which fails to meet Housing Quality Standards.

"You need to come into the Section 8 Office within 10 days from the above date to complete the paperwork and pick up your certificate to find another unit."

The trial court reasoned:

"I'm going to find that there was no contract as of the dates for August and September of 1995. I note by the language on the face of Exhibit One which is the lease dated commencing August 1994, I note that it says, 'It shall continue until'—and it lists several things. 'One. A termination of the lease by the landlord under Section Seven of the lease', and [it's] not applicable here. 'A termination by the lease by the tenant', which is not applicable here. And the last one, 'A termination of the contract by the Public Housing Association.' While I understand the argument of the defendant is that it was apparently abated, *the language of Exhibit B indicates to this court that—that they were cancelling the contract as it pertains to this unit. It says, 'You will need to pick up your paperwork and to find another unit.' I don't see how that can be read in any other manner."* (Emphasis added.)

The trial court's finding that the Housing Authority terminated its contract with Sunflower is contrary to provisions contained in both the contract and the lease. First, both documents specifically contemplate abatement of payments or termination of the lease if the premises fall below federal standards. The documents empha-

size that written notice shall be given in either event. Second, the documents between the parties limit Sunflower to recovery of the tenant portion of the rent from Johnson. Third, the documents limit the conditions under which Sunflower may terminate the contract and require that Sunflower provide the Housing Authority with notice of legal action taken against Section 8 tenants.

Both documents set out the landlord's obligation to maintain the premises in accordance with federal standards. The lease agreement provides:

"The Landlord shall maintain the Dwelling Unit, equipment and appliances, and common areas and facilities, to provide decent, safe and sanitary housing in accordance with housing quality standards (24 CFR Section 882.109) for the Section 8 Existing Housing Program, including the provision of all the services, maintenance and utilities set forth in this Lease."

Similarly, the housing assistance contract provides:

"The Owner agrees to maintain and operate the Contract unit and related facilities to provide decent, safe and sanitary housing in accordance with 24 CFR Section 882.109, including the provision of all the services, maintenance and utilities as agreed to in the Lease. *If the PHA determines that the Owner is not meeting this obligation, the PHA shall have the right, even if the Family continues in occupancy, to terminate or reduce housing assistance payments to the Owner, and to terminate the Contract.*" (Emphasis added.)

The housing assistance contract further provides that a violation of any obligation under the contract shall constitute a breach of the contract. The contract sets out the Housing Authority's remedies in the event of a breach as follows:

"If the PHA determines that a breach has occurred, the PHA may exercise any of its rights or remedies under the Contract. The PHA shall notify the Owner in writing of such determination, including a brief statement of the reasons for the determination. The notice by the PHA to the Owner may require the Owner to take corrective action (as verified by the PHA) by a time prescribed in the notice. The PHA's rights and remedies under the Contract include recovery of overpayments, termination or reduction of housing assistance payments, and termination of the Contract.

"Any termination or reduction of housing assistance payments, or termination of the Contract by the PHA in accordance with this Contract, shall be effective as provided in a written notice by the PHA to the Owner."

In conformity with the contract requirements, the Housing Authority furnished Sunflower with notice, dated June 1, 1995, that an interim inspection of Johnson's rental unit revealed deficiencies which should be corrected so that Sunflower could continue to receive subsidy payments. The notice listed the deficiencies and instructed that repairs should be made before the July 3, 1995, reinspection date. The notice warned: *"Failure to comply with these requirements will result in cancellation of your Housing Assistance Payment."* (Emphasis added.) Handwritten notations at the top of the notice indicate that although the repairs were not completed as of September 13, 1995, the unit passed inspection on September 25, 1995. Payments were resumed in October 1995. Clearly, if the housing assistance contract had been terminated by the Housing Authority on August 1, 1995, as previously determined by the trial court, the Housing Authority would have had to enter into a new contract with Sunflower to resume making payments to Sunflower. Nevertheless, the record is totally void of any information as to whether a new contract was signed between Sunflower and the Housing Authority.

Both the lease agreement and the housing assistance contract specified that written notice would precede cancellation of payments or termination of the contract. Here, Sunflower's manager, Abdul H. Asalati, testified that he received written notice that Johnson's rental unit had fallen below federal standards and that failure to repair the unit would result in the loss of housing assistance payments. Conversely, Sunflower presented no testimony or documentary evidence of notice that the contract was being terminated. Furthermore, Johnson testified that she was never told that the housing assistance contract had been terminated.

Although Johnson was not a signatory to the housing assistance contract between Sunflower and the Housing Authority, the parties do not dispute the fact that Johnson was a third-party beneficiary of that contract. The housing assistance contract specifically names Johnson and her family as the intended beneficiaries. See *Fasse v. Lower Heating & Air Conditioning, Inc.*, 241 Kan. 387, 389, 736 P.2d 930 (1987). In *Fasse*, our Supreme Court held that "[t]he third party beneficiary can enforce the contract if he is one who

the contracting parties intended should receive a direct benefit from the contract." 241 Kan. at 389.

A key provision in the housing assistance contract stated that "the termination of a Family's housing assistance payments shall not affect the Family's other rights under the Lease, nor shall such termination preclude the resumption of payments as a result of changes in income or rent or other relevant circumstances during the term of the Contract." This is exactly what happened in this case. The housing assistance payments were terminated for 2 months, and the payments were resumed when Sunflower corrected the deficiencies in the premises.

This provision makes it abundantly clear that the termination of the family's housing assistance payments by the Housing Authority would not be considered a termination of the lease. Both the lease agreement and the housing assistance contract had similar provisions in this regard, and the lease agreement stated:

"The portion of the Contract rent payable by the Family ('tenant rent') will be an amount determined by the PHA in accordance with HUD regulations and requirements. *This amount is the maximum amount the Owner can require the Family to pay for rent of the Contract unit,* including all services, maintenance and utilities to be provided by the Owner in accordance with the Lease." (Emphasis added.)

The housing assistance contract provided:

"The portion of the Contract Rent payable by the Tenant (referred to as 'Tenant Rent') shall be an amount determined by the PHA in accordance with HUD regulations and requirements. . . .

"*The Tenant Rent, as determined by the PHA, is the maximum amount the Landlord can require the Tenant to pay as rent for the Dwelling Unit herein leased,* including all services, maintenance and utilities to be provided by the Landlord in accordance with this Lease." (Emphasis added.)

Clearly, under the lease agreement and the housing assistance contract, Johnson's rent payment could not exceed $75 per month. Because this condition is in both the lease and housing assistance contract and because Sunflower has failed to show that the Housing Authority terminated its contract with Sunflower on August 1, 1995, the trial court erred in requiring Johnson to pay rent in excess of $75 per month.

Reversed and remanded.