OPINION OF THE COURT
Marian C. Doherty, J.
On the consent of the parties, a total of six landlord-tenant holdover proceedings have been consolidated under the above-named case and index number. For purposes of resolving these disputes, the fact patterns and the legal issues are essentially identical. The entities that are the landlords in each case are owned or managed by a single company and are represented by the same law firm. The respondents are represented by Legal Services NYC-Bronx.
The respondents move for dismissal of the petitions pursuant to the CPLR 3211 (a) (2) and (7). In the alternative they seek summary judgment pursuant to the CPLR 3212. Thé New York City Housing Authority (NYCHA), which is named as a corespondent in these proceedings, submitted an affirmation in support of the respondents’ motion, thereby adding its distinct legal perspective in support of the motion to dismiss. The petitioners cross-move for denial of the respondents’ motion and for summary judgment pursuant to the CPLR 3212. The respondents’ motion is granted; the petitioners’ cross motion is denied.
The underlying facts are not in dispute.[1] In each case the respondent tenants had been beneficiaries of Section 8 housing assistance payments (HAP), which were payments of a portion of their rents made by the NYCHA to their landlords. In due course their apartments all failed federally-mandated housing *207 quality standards (HQS) inspections. Thereafter, despite warnings from the NYCHA, the petitioner landlords have not as yet fulfilled their legal and contractual obligations to rectify the offending conditions. Nor have the petitioners offered any defenses or explanations, rational or otherwise, for their concerted failures to perform their duties as landlords; rather, they say that such information is immaterial.
Due to the petitioners’ refusal to remedy the HQS violations, the Section 8 payments were initially suspended by the NYCHA and ultimately, after more than 180 days without payment of the Section 8 portions of the rent, the NYCHA terminated the HAP contract, which, according to a clause in the contracts, automatically terminated the leases as well. Throughout, the respondents have continued to pay their own, non-Section 8 portion of the rent.[2] Based on the termination of the HAP contract and the lease, and after certifying to the NYCHA, the petitioners served termination notices on the respondents and then commenced these holdover proceedings.
In support of their motion for dismissal, the respondent tenants in essence put forward two arguments — the first is based on their understanding of the Rent Stabilization Code. They assert that “[p]rior to commencement of a holdover proceeding against a rent stabilized tenant, a landlord must serve a termination notice which states a ground under § 2524.3 (wrongful acts of tenant), or § 2524.4 (nonrenewal of lease) of the Rent Stabilization Code.” (Respondents’ mem of law, dated Sept. 21, 2009, section II [B] [citations omitted].) Further, the respondents argue that the “notice must further elaborate the facts necessary to establish the existence of such ground.” (Id.) Therefore, the respondents reason, the termination notices each failed to state a ground under the relevant section of the Rent Stabilization Code; thus the petitions should be dismissed for failure to state a cause of action. (Id.)
The respondents’ second argument invokes equity and public policy, and also charges that the landlords’ behavior amounts to harassment under 9 NYCRR 2525.5. The respondents maintain that
*208 “[t]o hold that Petitioners have a claim for eviction would allow landlords to turn their own failures of performance into weapons against their tenants and thus entirely pervert and undermine both the Section 8 and rent stabilization schemes .... The claim asserted ... in these proceedings turns both state and federal tenant protections on their heads. Indeed, New York law holds the failure to maintain premises in order to remove the tenants to be a species of harassment, 9 NYCRR § 2525.5.” (Respondents’ mem of law, dated Sept. 21, 2009, section II [C] [2].)
The NYCHA in its own right as a co-respondent provides additional arguments favoring dismissal. Whereas the tenants look to the Rent Stabilization Code to support the claim that the petitioners must have a “good cause” basis to evict them, the NYCHA focuses its argument on the duties of the petitioners defined under the Williams Second Partial Consent Judgment. (See Williams v New York City Hous. Auth., 81 Civ 1801, Second Partial Consent Judgment, signed Feb. 2, 1995, attached as exhibit A to affirmation in support of respondents’ motion to dismiss and in opposition to petitioners’ cross motion, dated Nov. 13, 2009 ['Williams Second Consent Judgment].) NYCHA points out that the petitioners are bound by the Williams Second Consent Judgment, which requires a petitioner seeking to evict a Section 8 tenant to have a “good cause” basis for doing so, and that such a petitioner must, as well, certify the basis of its claim to the NYCHA. (See Williams Second Consent Judgment.)
The petitioners contest the positions taken by the tenants and the NYCHA. Their primary counterargument is that they need only satisfy section 711 (1) of the Real Property Actions and Proceedings Law. RPAPL 711 (1) authorizes a holdover proceeding based solely on the ground that a tenant “continues in possession of . . . the premises after the expiration of his term, without the permission of the landlord.” They reason that RPAPL 711 (1) applies because the lease was terminated according to the HAP contract which was terminated by the NYCHA, notwithstanding the fact that the terminations were a direct result of the petitioners’ failure to maintain HQS. Absent a lease, the petitioners believe they are freed from the constraints of 9 NYCRR 2524.3 and 2524.4, which, as indicated above, require good cause. Instead they insist that 9 NYCRR 2524.1 (c) furnishes an additional ground, to wit, that a tenant may be *209 removed based on a “ground authorized in this Part or under . . . the Real Property Actions and Proceedings Law,” thereby implicating RPAPL 711 (1). (See affirmation 1Í 5, contained in notice of cross motion, dated Oct. 30, 2009.)
In the same vein, the petitioners maintain that “good cause” is not a necessary element of their claims as they are no longer contractually bound by the laws and rules pertaining to Section 8. They say that because the landlord-tenant relationship had been automatically terminated they are no longer held to a contractual requirement to evict for cause and also that the “HAP Contract states that fault has no bearing.” (Id. If 14.) In addition, they believe that they should not be held to the requirements of the Williams Second Consent Judgment because the consequences of doing so would be unfair to them. The petitioners conclude that the Williams Second Consent Judgment should not serve as an obstacle to evicting the respondents solely because the leases were terminated. In addition, they assert that under these circumstances, certification to the NYCHA is not required, although in these cases they did in fact do so.
For support, the petitioners look to 1801 Weeks Ave. v Crawford (182 Misc 2d 251 [1999]). The petitioners quote and paraphrase extensively from Weeks, a case in which the facts closely parallel the facts in these present cases. (One significant difference is that in Weeks, the respondent was unrepresented.) Just as the petitioners argue in these cases, the Weeks case held that certification was unnecessary and that expiration of the lease, in and of itself, is the only ground needed to support eviction notwithstanding the fact that the lease was terminated due to the malfeasance of the landlord.
While the petitioners categorically reject a need for good cause, the Weeks court, at least initially, was not clear about how it viewed the need for “good cause.” For the most part, the court did not seem to reject the view that, as pertains to Section 8 holdovers, the petitioner must have a good cause basis to evict. Rather, it found that under the circumstances it would be punitively unfair to prevent the landlord indefinitely from retaking possession as a consequence of the landlord’s persistent refusal to remedy violations determined to exist by a governmental agency after an HQS inspection. The Weeks court warned that “NYCHA can indefinitely refuse to renew its contract with the petitioner if the HQS are not satisfied,” which would allow “the respondent... to remain in the subject premises virtually *210 rent free (being responsible for only the minimal portion of rent not covered by the section 8 subsidy).” (182 Misc 2d at 255.)[3] The court continued:
“The court finds this situation unconscionable and does not believe that this is what was intended by the Federal court in approving the Williams consent decree . . . [T]he ability of NYCHA to indefinitely suspend or terminate subsidies, which cannot be retroactively recouped, is clearly designed to cause economic hardship on the landlord until he or she brings the premises within compliance of the law. To further prevent a landlord from commencing a summary holdover proceeding subsequent to the termination of the lease, under these circumstances, would be punitive in nature.” (Id.)
Thus at first the Weeks opinion did not seem to rule out the need for “good cause” per se. Rather, under the circumstances the court rejected (just as the petitioners do in this case) the need to examine what it termed the landlord’s “unconscionable” malfeasance, allowing instead that the requirement for a “good cause” ground was sufficiently satisfied solely by the absence of a lease. It reasoned:
“If, during the term of the lease, it is deemed good cause for a landlord to commence a holdover proceeding based on the tenant’s failure to renew a lease, then, a fortiori, it should certainly be deemed good cause to prosecute on such grounds where the lease has already expired and there is no longer a contractual . . . relationship in existence.” (Id. at 256-257.)
Thus the court equated the “tenant’s failure to accept the owner’s offer of a new lease,” which is listed in the HAP contract as a “good cause” ground (HAP contract part C [6] [d] [3] [a]), with what it characterized as an “already expired” lease, regardless of the underlying cause of the “expiration.” Elsewhere in the opinion, however, the court seemed to jettison a good cause requirement entirely:
“It is the opinion of the court that, under the facts of this case, it is not necessary to allege good cause; that the basis for this holdover did not arise while the lease was in effect since it is the expiration of the lease itself that gives rise to this proceeding; *211 and, therefore, certification is not required.” (182 Misc 2d at 257.)
In any event, the Weeks court decided that all that was necessary and relevant for the petitioner landlord to state a claim, whether or not characterized as “good cause,” was to plead that the lease had expired.
This court agrees with the respondents and rejects the reasoning offered by the petitioners. With respect to these cases, four overlapping legal schemes come to bear — federal statute, the Williams Second Consent Judgment, the HAP contract, and the Rent Stabilization Code. Each must be applied with a view to the others. Contrary to the position taken by the petitioners in these proceedings, 42 USC § 1437f (d) (B) (ii) and the Williams Second Consent Judgment unambiguously require a landlord to have a “good cause” basis for terminating a Section 8 tenancy. 42 USC § 1437f (d) (B) (ii) mandates that “during the term of the lease, the owner shall not terminate the tenancy except for serious or repeated violation of the terms and conditions of the lease, for violation of applicable Federal, State, or local law, or for other good cause.” Subsection (d) (B) (iv) of the statute goes on to declare that “any termination of tenancy shall be preceded by the owner’s provision of written notice to the tenant specifying the grounds for such action.” The language of the statute provides no exceptions.
The Williams Second Consent Judgment echoes the requirements of 42 USC § 1437f. Under the section entitled “Good Cause for Eviction,” the Second Consent Judgment states:
“3. Eviction proceedings brought against tenants to the Section 8 Existing Housing Certificate or Voucher program administered by the Authority must comply with 42 USC § 1437f
“4. Good cause for eviction is a necessary element in all eviction proceedings, including proceedings brought after the Section 8 lease and Housing Assistance Payments (‘HAP’) or Housing Voucher contract terminate or expire, where the grounds for eviction arose while the lease and contract were in effect or where such grounds for eviction relate to the Section 8 tenancy.” (Williams Second Consent Judgment 1Í1Í 3-4.)
There is no need to guess at the intent of those words. As with the language in 42 USC § 1437f, their meaning is plain. Thus even after the contract and the lease have been terminated, an *212 owner may not evict without “good cause.” The Williams Second Consent Judgment does not create an exception where circumstances lead to harsh consequences for a landlord.
A reading of the HAP contract makes it clear that a landlord’s failure to correct HQS violations will eventually lead to the terminations of the contract and the lease. The contract spells out a landlord’s duties with respect to HQS and defines a failure to perform those duties as a breach of the contract. In the HAP contract an owner agrees that it “must maintain the contract unit and premises in accordance [with] the housing quality standards (HQS).” (HAP contract part B [3] [a].) Furthermore, an “owner certifies” that it will maintain “the contract unit and premises in accordance with the HQS.” {Id. part B [8] [a].) Elsewhere, the contract says, “The owner must provide all housing services as agreed to in the lease.” {Id. part B [3] [g].)
In turn the HAP contract provides that an owner has breached the HAP contract if “the owner has violated any obligation under the HAP contract, including the owner’s obligation to maintain the unit in accordance with HQS.” {Id. part B [10] [a] [1].) It also lists the penalties for breach. The parties to the HAP contract agree:
“If the owner does not maintain the contract unit in accordance with the HQS, . . . the PHA [public housing authority] may exercise any available remedies. PHA remedies for such breach include . . . termination of housing assistance payments, and termination of the HAP contract.” {Id. part B [3] [c].)
Significantly, the contract specifies that “[e]ven if the family continues to live in the contract unit, the PHA may exercise any rights and remedies for owner breach of the HAP contract.” {Id. part B [10] [e].)
In these proceedings the grounds for the evictions “arose while the lease and contract were in effect” and “relate to the Section 8” tenancies. {Williams Second Consent Judgment HH 3-4.) This is because the NYCHA termination of the contracts and leases was a direct response to the petitioners’ breaches of the HAP contract; if the petitioners had not refused to maintain HQS, as their contracts required, then the NYCHA would have been without a basis to terminate the contracts and the leases. The terminations of both the HAP contract and the leases trace directly back to the landlords’ willful violations of the contracts; *213 the landlords’ actions were ultimately the cause of the terminations. Viewed in this light, ultimately it was the petitioners who terminated the leases. Under federal statute, the Williams Second Consent Judgment, and the HAP contract, such attempts to evict the tenants without good cause cannot stand.
This court also rejects the proposition that dismissal of these proceedings would generate an unconscionable result because it would mean that the respondents would then “remain in the subject premises virtually rent free (being responsible for only the minimal portion of rent not covered by the section 8 subsidy).” (1801 Weeks Ave. v Crawford, 182 Misc 2d 251, 255 [1999]; affirmation 11 5, contained in notice of cross motion, dated Oct. 30, 2009.) In the first place, as pointed out above (see n 2, supra), such a generalization fails because the respective portions of the total rent paid by Section 8 and a tenant vary according to the family income. Thus it is not necessarily true that the respondents would live rent free. Ultimately, the argument is flawed because it portrays the landlords, rather than the tenants, as victims, when all along the petitioner landlords have held within their hands the power to restore their right to receive the Section 8 portion of the rent; they need simply to do what they are obliged to do — that is, correct the HQS violations. Their claims that they would be inordinately penalized is a bit like the culprit who blames the victim.
Furthermore, this court declines to question the intent of the drafters of 42 USC § 1437f or the Williams Second Consent Judgment, and indeed it does not have the power to do so; nor will this court reform the language of the HAP contract. In any event, this court emphatically believes that it is well within the power of a government agency such as the NYCHA to employ economic pressure, including prohibiting a landlord from evicting a blameless tenant until the landlord fulfills its responsibilities by bringing “the premises within compliance of the law.” As one example of another government entity imbued with well-accepted powers to employ economic pressure, one need look no further than the housing court. Charged with the “maintenance of housing standards,” the housing court frequently awards rent abatements for violations. (CCA 110 [a].) Moreover, the Housing Part of Civil Court levies fines and has the power to punish for contempt.
This court also concludes that the petitioners’ attempt to invoke RPAPL 711 (1) through 9 NYCRR 2524.1 (c) is mistaken. The RPAPL states:
*214 “Grounds where landlord-tenant relationship exists. A tenant . . . shall not be removed from possession except in a special proceeding. A special proceeding may be maintained under this article upon the following grounds:
“1. The tenant continues in possession of any portion of the premises after the expiration of his term, without the permission of the landlord ... A proceeding seeking to recover possession of real property by reason of the termination of the term fixed in the lease pursuant to a provision contained therein giving the landlord the right to terminate the time fixed for occupancy under such agreement if he deem the tenant objectionable, shall not be maintainable unless the landlord shall by competent evidence establish to the satisfaction of the court that the tenant is objectionable.” (RPAPL 711 [1].)
Thus RPAPL 711 (1) contemplates two distinct situations: the first involves a lease term that has run its full course after having naturally elapsed; the second addresses the circumstance in which a term has been cut short by the exercise of a right conferred upon the landlord in response to objectionable conduct of the tenant. Neither situation applies in these cases. The full terms of the leases had not run. They had been cut short, but not due to objectionable conduct by the tenants. With very limited exceptions, none of which apply here, leases do not simply expire for housing units that are subject to the Rent Stabilization Code. Normally under rent stabilization, upon the expiration of a term, a lease must be renewed. Nor can the terminations of the leases be attributed to the tenants’ objectionable conduct. To the contrary, if the conduct of any of the parties may be said to be objectionable, it is that of the landlords.
Moreover, this court rejects the notion that a “tenant’s failure to renew a lease, ... a fortiori,” is the legal equivalent to a lease terminated by the NYCHA as a direct and legally-required response to willful violations of contract and statute by a landlord. (1801 Weeks Ave. v Crawford, 182 Misc 2d 251, 256 [1999].) The petitioners’ efforts to evict the respondents under RPAPL 711 (1) are misapplied. If anything, their attempts could more accurately be seen as contravening 9 NYCRR 2524.1 (a): “As long as the tenant continues to pay the rent to which the owner is entitled, no tenant shall be denied a renewal lease or be removed from any housing accommodation by action to evict or to recover possession.”
*215 The petitioners in these cases may not employ RPAPL 711 (1) as a means of evading the strictures of the Rent Stabilization Code, for. whatever purpose they may have — whether it be to rid themselves of Section 8 tenancies where they are otherwise proscribed from doing so, or to achieve greater rent increases through increased tenant turnover. Nor may the petitioners evade the strictures and requirements of 42 USC § 1437f, the Williams Second Consent Judgment, or the HAP contract.
Accordingly, the petitions are dismissed due to the failure of the petitioners to state “good cause” grounds for these proceedings.

. The petitioners, in their cross motion, object that the respondents have failed to attach affidavits of the parties to their motion papers. However, as both sides agree about the essential facts, and the dispute revolves around purely legal issues, such affidavits would be irrelevant.

. Contrary to statements of the petitioners as well as the court in 1801 Weeks Ave. v Crawford (182 Misc 2d 251 [Civ Ct, Bronx County 1999]), a case greatly relied upon by the petitioners, depending on income and family composition, a tenant could very well be responsible for a major portion of the rent while the NYCHA share could be minuscule. In these cases, the parties did not disclose the monthly rents nor did they break down the amounts payable by the NYCHA and those payable by the individual tenants.

. See n 2, supra.