Filed 1/4/17

CERTIFIED FOR PUBLICATION

IN THE APPELLATE DIVISION OF THE SUPERIOR COURT

STATE OF CALIFORNIA, COUNTY OF FRESNO


CANDY SCOTT,                         )   Sup. Ct. Appeal No. 2574
                                     )
        Defendant and Appellant,     )   Sup. Ct. No. 15CECL09273
                                     )
v.                                   )
                                     )
SHEIKH KAIUUM,                       )
                                     )
        Plaintiff and Respondent.    )
                                     )
                                     )
_____)

APPEAL from a judgment of the Superior Court of Fresno County, Lisa Gamoian, Judge. Reversed.[1]

**Attorneys and Law Firms**

Central California Legal Services, Inc., Marcos Seguro, for Defendant and Appellant.

Law Offices of Daniel A. Bruce, Daniel A. Bruce, for Plaintiff and Respondent.

**Opinion**

GARY D. HOFF, J.

---

[1] This opinion was originally issued by the court on December 7, 2016. It was certified for publication on January ___, 2017, which is within the time that the appellate division retained jurisdiction. This opinion has been certified for publication in the Official Reports. It is being sent to the Fifth District Court of Appeal to assist the Court of Appeal in deciding whether to order the case transferred to the court on the court's own motion under Rules 8-1000 – 8.1018.

# I.

## Introduction

In this appeal from an unlawful detainer judgment, appellant Candy Scott (hereinafter "appellant") contends that the trial court erroneously granted judgment in favor of respondent Sheikh Kaiuum (hereinafter "respondent"). She argues that the respondent was not allowed to evict her for failure to pay the full amount due under her rental contract because she was the beneficiary of subsidized rental payments under 42 U.S.C.A. 1937f, Section 8. She contends that the Fresno County Housing Authority had ceased making Section 8 payments on her behalf due to the respondent's failure to maintain the property in a habitable condition, and thus respondent should not have been allowed to declare her in breach of the rental agreement.

We agree that it was respondent's conduct, not appellant's, that caused the Housing Authority to cease making Section 8 payments, and that respondent was not permitted by law to recover the unpaid amounts from appellant, or to declare her to be in breach of the lease when she failed to make the full payments. Therefore, we will reverse the trial court's judgment.

# II.

## Facts

On January 14, 2015, appellant and respondent entered into a one-year residential rental agreement with rent set at the market rate of $700 per month. However, a portion of appellant's rent was subsidized through the Federal Section 8 program. In accordance with Section 8 regulations, respondent and the Fresno

County Housing Authority entered into a Housing Assistance Payment Contract ("HAP contract"), which required the Housing Authority to pay respondent $684 of appellant's $700 per month rent each month starting on September 1, 2015. The HAP contract prohibited respondent from charging appellant more than $16 per month.

On October 27, 2015, the Housing Authority sent respondent and appellant a letter stating that the property had failed a recent inspection, and listing multiple violations of the federal habitability standards, all but one of which were deemed to be caused by the owner. The letter warned that there would be another inspection on November 17, 2015, and that, if the defects were not cured by the time of that inspection, the Housing Authority would abate all further Section 8 payments effective December 1, 2015, and the HAP contract would be canceled effective December 17, 2015.

On November 18, 2015, the Housing Authority sent respondent another letter, stating that the property had failed the second inspection, that the Housing Authority would abate Section 8 payments to respondent effective December 1, 2015, and that the HAP contract would be canceled on December 17, 2015 unless repairs were made before the cancelation date. There was an inspection report attached to the letter that listed multiple separate violations in appellant's unit and the common areas of the complex, all of which were all determined to be the responsibility of respondent owner. The letter also informed the respondent that it was "not permitted to recover monies from the resident."

Nevertheless, when rent came due on December 1, 2015, respondent demanded that appellant pay the entirety of the $700

rent under the rental agreement. When rent became past due on December 4, 2015, respondent served appellant with a three-day notice to pay or quit, again demanding the full $700 rental payment.

When appellant did not pay rent or leave the premises, respondent filed his complaint for unlawful detainer on December 16, 2015. Appellant filed her answer on December 21, 2015, raising defenses based on lack of habitability and violation of the agreement with the Housing Authority. Trial was set for January 12, 2016.

At the trial, Judge Lisa Gamoian found that respondent had failed inspections due to substandard conditions at the unit, and that the Housing Authority had given notice that Section 8 rent would not be paid to respondent if the violations were not cured. However, the court found that, because the deficiencies were not cured by the deadline, the Section 8 contract had terminated and thus appellant was required to pay the full amount of rent under the rental agreement. Therefore, the court granted the unlawful detainer judgment in favor of respondent and against appellant. The court also ordered appellant to pay past due rent and holdover damages of $1,242.96. Appellant then filed the present timely appeal.

### III.

### Discussion

**Standard of Review:** There are no disputed issues of fact, so we apply the *de novo* standard of review to the trial court's construction of the relevant statutes and ordinances, as well as to the court's determination that the complaint states a cause of

action.  (*Naylor v. Superior Court* (2015) 236 Cal.App.4th Supp. 1, 6.)

**Principles of Unlawful Detainer and Section 8 Law:**  Under Code of Civil Procedure section 1161, "A tenant for a term less than life is guilty of unlawful detainer by continuing in possession without the landlord's permission after default in the payment of rent pursuant to the lease or rental agreement, and after a three-days' written notice stating the amount due and requiring the payment or possession of the property, has been served on the tenant and subtenant, if any.  (Code Civ. Proc., § 1161, subd. (2).)"  (Smith-Chavez, Stratton & Trembath, Cal. Practice Real Property Litigation (2016) § 18:9.)

Also, "Section 1161 of the Code of Civil Procedure requires that the three-day notice must state 'the amount which is due.' It is settled law that this section incorporates the common law view that in order to work a forfeiture of a lease for nonpayment of rent the landlord must demand the precise sum due, and that a demand in excess of the judgment will not support the judgment." (*Werner v. Sargeant* (1953) 121 Cal.App.2d 833, 837.)

In addition, since appellant was renting the unit under the federal Section 8 program, the respondent had to comply with federal statutes and regulations related to Section 8 before it could evict appellant.  "[T]ermination proceedings under Section 8's existing housing program are left by Congress and HUD to state law" and "the landlord can institute unlawful detainer proceedings in state court."  (*Gallman v. Pierce*, 639 F.Supp. 472, 478 (N.D.Cal.1986).) The regulations regarding termination of a Section 8 lease agreement provide that tenancy may be

terminated for serious violation of the terms of the lease, "including but not limited to failure to pay rent." (24 C.F.R. § 982.310(a).)

However, under the HUD regulations, "The owner must maintain the unit in accordance with HQS [Housing Quality Standards]." (24 C.F.R. § 982.404, subd. (a)(1).) "If the owner fails to maintain the dwelling unit in accordance with HQS, the PHA [Public Housing Authority] must take prompt and vigorous action to enforce the owner obligations. PHA remedies for such breach of the HQS include termination, suspension or reduction of housing assistance payments and termination of the HAP contract." (24 C.F.R. § 982.404, subd. (a)(2); see also 24 C.F.R. § 982.453, subd. (b).)

"The PHA must not make any housing assistance payments for a dwelling unit that fails to meet the HQS, unless the owner corrects the defect within the period specified by the PHA and the PHA verifies the correction." (24 C.F.R. § 982.404, subd. (a)(3).)

Also, "Any of the following actions by the owner... is a breach of the HAP contract by the owner: (1) If the owner has violated any obligation under the HAP contract for the dwelling unit, including the owner's obligation to maintain the unit in accordance with the HQS." (24 C.F.R. § 982.453, subd. (a)(1).)

Moreover, "*The family is not responsible for payment* of the portion of the rent to owner covered by the housing assistance payment under the HAP contract between the owner and the PHA." (24 C.F.R. § 982.310, subd. (b)(1), emphasis added.)

Furthermore, "The PHA['s] failure to pay the housing assistance payment to the owner is *not a violation of the lease*

-6-

between the tenant and the owner. During the term of the lease *the owner may not terminate the tenancy of the family for nonpayment* of the PHA housing assistance payment." (24 C.F.R. § 982.310, subd. (b)(2), emphasis added.)

**Application:** We find that the trial court's decision to grant judgment in favor of respondent and evict appellant was in error. First of all, under the HAP contract and HUD regulations, appellant was only obligated to pay $16 per month of rent, not the full $700 market rate rent pursuant to the rental agreement. Thus, to the extent that the three-day notice sought to recover the full $700 in rent from appellant, the notice greatly overstated the amount of rent due. As a result, the three-day notice was inaccurate and could not form the basis of a valid unlawful detainer claim, nor could it properly support any subsequent unlawful detainer judgment. (*Werner v. Sargeant*, *supra*, 121 Cal.App.2d at p. 837.)

Also, the judgment was in violation of the HUD regulations that prohibit the owner from collecting the unpaid rental subsidy from the resident when the Housing Authority abates the subsidy payment due to habitability standard violations by the owner. "*The family is not responsible for payment* of the portion of the rent to owner covered by the housing assistance payment under the HAP contract between the owner and the PHA." (24 C.F.R. § 982.310, subd. (b)(1), emphasis added.) "The PHA failure to pay the housing assistance payment to the owner is *not a violation of the lease between the tenant and the owner*. During the term of the lease *the owner may not terminate the tenancy of the family*

for nonpayment of the PHA housing assistance payment." (24 C.F.R. § 982.310, subd. (b)(2), emphasis added.)

Yet here, the owner served a three-day notice to pay rent or quit after the Housing Authority abated Section 8 subsidy payments to the owner due to the owner's violation of the habitability standards under Section 8. There is no dispute that the abatement was due to multiple violations of the habitability standards, or that the violations were solely caused by the owner, rather than the tenant. Under these circumstances, the owner was not allowed to recover the unpaid amount of rent from the resident, and the Housing Authority's letter clearly stated as much. Thus, the trial court should not have found the tenant to be in violation of the lease terms or granted judgment in favor of the owner. Nor should the trial court have found the tenant liable for the unpaid rental amounts, which were based on the full market rate rather than the remaining balance of $16 that was the tenant's responsibility.

It appears that the trial court believed that it was the responsibility of both the owner and the tenant to cure the defects in the unit, and that, since the HAP contract was terminated for failure to cure the defects, therefore the tenant was liable for the full amount of rent under the rental agreement. However, as discussed above, the Housing Authority found that the violations were solely caused by the owner, not the tenant. As such, the owner had no right to seek the balance of the unpaid subsidy payment from the tenant.

In addition, the November 18, 2015 letter from the Housing Authority made it clear that, while the Section 8 payments would

be abated effective December 1, 2015, the HAP contract would not be canceled until December 17, 2015. Thus, the HAP contract had not yet been canceled at the time the three-day notice was served on December 4, 2015, or even when the unlawful detainer complaint was filed on December 16, 2015. As a result, even assuming that the owner could have properly recovered the full market rate rent from the tenant after the HAP contract was canceled, which it could not, here the three-day notice and complaint were filed before the contract had been canceled. Consequently, the owner was not entitled to recover the full market rate rent of $700 per month from the tenant, and the court should not have granted judgment based on the failure to pay the full rental amount.

Allowing the owner to recover the unpaid balance of the Section 8 subsidy from the tenant when the Housing Authority had canceled the payments due to the owner's failure to cure the habitability violations would also be inconsistent with the intent of Section 8, which is to make it possible for low-income tenants to obtain affordable, safe, and decent housing. (See 42 U.S.C. 1937f, subd. (a).) Permitting a landlord to evict a tenant for failure to pay the full market amount of rent because the landlord failed to remedy basic violations of the habitability standards of Section 8 would reward the landlord for its bad behavior, and perhaps even create an incentive for landlords to refuse to correct defects with their properties.

There is a dearth of California authorities addressing this issue, but we note that other states have consistently held that an owner who refuses to correct violations of habitability standards are not allowed to then either collect the full amount

of rent from their tenants, or evict them if they fail to pay full market rate rents. For example, in *1212 Grand Concourse LLC v. Ynguil*, 2010 WL 183762, 894 N.Y.S.2d 713, 27 Misc. 3d 205, a New York court found that the landlords could not evict their Section 8 tenants when it was the landlords' failure to cure the defective conditions of the premises that had caused the HAP contracts to be terminated. (*1212 Grand Concourse*, *supra*, 27 Misc. 3d at pp. 212 – 213; see also *Sunflower Park Apartments v. Denise Johnson* (1997) 23 Kan. App. 2d 862; *Soliman v. Cepeda* (1993) 269 N.J. Super. 151, 636 A.2d 1057.)

While this court is not bound by the decisions of courts in other jurisdictions, we agree with their reasoning that it would defeat the intent of Section 8 and the HUD regulations to allow the respondent landlord to demand full rent payments from the appellant when it was the respondent who allowed the property to fall into such disrepair that it fell below minimum standards of habitability under federal law. It would give the landlord no incentive to correct such unsafe and unsanitary conditions if the landlord could simply demand full rental payments from the tenant when the Housing Authority cuts off the Section 8 subsidy payments. In fact, it would reward the landlord for its own bad conduct to allow unlawful detainer actions to proceed in such circumstances.

Furthermore, the respondent was also not entitled to demand payment of rent under California Law because the conditions of the rental unit violated Civil Code section 1941.1. Under Civil Code section 1942.4,

(a) A landlord of a dwelling may not demand rent, collect rent, issue a notice of a rent increase, or issue a three-day notice to pay rent or quit pursuant to subdivision (2) of Section 1161 of the Code of Civil Procedure, if all of the following conditions exist prior to the landlord's demand or notice:

(1) The dwelling substantially lacks any of the affirmative standard characteristics listed in Section 1941.1...

(2) A public officer or employee who is responsible for the enforcement of any housing law, after inspecting the premises, has notified the landlord or the landlord's agent in writing of his or her obligations to abate the nuisance or repair the substandard conditions.

(3) The conditions have existed and have not been abated 35 days beyond the date of service of the notice specified in paragraph (2) and the delay is without good cause...

(4) The conditions were not caused by an act or omission of the tenant or lessee in violation of Section 1929 or 1941.2.

(Civ. Code, § 1942.4.)


Also, under Civil Code section 1941.1,


(a) A dwelling shall be deemed untenantable for purposes of Section 1941 if it substantially lacks any of the following affirmative standard characteristics or is a residential unit described in Section 17920.3 or 17920.10 of the Health and Safety Code:

(1) Effective waterproofing and weather protection of roof and exterior walls, including unbroken windows and doors.

(2) Plumbing or gas facilities that conformed to applicable law in effect at the time of installation, maintained in good working order.

...

(6) Building, grounds, and appurtenances at the time of the commencement of the lease or rental agreement, and all areas under control of the landlord, kept in every part clean, sanitary, and free from all accumulations of debris, filth, rubbish, garbage, rodents, and vermin.

...

(8) Floors, stairways, and railings maintained in good repair. (Civ. Code, § 1941.1.)

Here, the conditions of the unit as described in the notice of abatement served on respondent showed that the unit fell below the standards of section 1941.1. The abatement letter contains a list of violations present in the unit that respondent failed to rectify, including exterior doors with missing trim, loose shower head, improperly installed water heater, roach infestation, garbage and debris in the common areas, hanging barbed wire on the carports, protruding nails on boarded up units, damaged stairs, and various other health and safety violations. The Housing Authority served respondent with notice of the violations on October 27, 2015, and warned respondent to fix the violations or Section 8 payments would be suspended and the HAP contract terminated. Respondent refused to repair the conditions despite having more than 35 days in which to do so. Finally, the letter from the Housing Authority clearly states that the conditions were caused by respondent, not the tenant.

Respondent did not deny any of these facts at trial, nor has respondent filed any opposition to appellant's brief on appeal, so respondent apparently concedes that the unsafe conditions existed, that they were caused by respondent, that it had notice of the violations, and that it failed to correct them. Therefore, because respondent failed to remedy the unsafe conditions at the unit after receiving notice of the violations, respondent had no right to collect any rent from appellant during

-12-

the period in which the violations went uncorrected. (Civil Code § 1942.4.)

As a result, the trial court's order granting the unlawful detainer judgment against appellant and awarding damages against her based on unpaid rent was erroneous.

## IV.

### **Disposition**

Accordingly, the judgment is hereby reversed, and the matter is remanded to the trial court with instructions to enter a new judgment denying all relief to respondent. It is so ordered.

Dated this __ day of January, 2017

_____
Hon. Gary D. Hoff, Judge

WE CONCUR:

_____
Hon. Donald S. Black, Presiding Judge
Appellate Division of Fresno Superior
Court

_____
Hon. Rosemary McGuire, Judge

-13-